**UNITED STATES of America, Appellee,**

v.

**Major Glenn FARRISH, aka Glenn, aka Glenn Farrish, Defendant–Appellant.**

**No. 1943, Docket 97–1057.**

United States Court of Appeals, Second Circuit.

Argued Aug. 6, 1997.

Decided Aug. 27, 1997.

M. Katherine Baird, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney, for the Southern District of New York, Craig A. Stewart, Assistant United States Attorney, New York City, on the brief), for Appellee.

Herald Price Fahringer, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, New York City (Erica T. Dubno, on the brief), for Defendant–Appellant.

Before: CALABRESI, CABRANES, and PARKER, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

In this appeal, we address whether the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), raised the threshold for satisfying the jurisdictional element of the Hobbs Act, 18 U.S.C. § 1951 ("Hobbs Act" or "Act").[1] We hold that *Lopez* did not alter the long-standing rule that the Government need only demonstrate a *de minimis* effect upon commerce in order to establish jurisdiction under the Act.

## I.

A jury convicted Major Glenn Farrish ("Farrish" or "appellant") on March 8, 1996 on two counts of violating the Hobbs Act by stealing cars, on two occasions, from the Chelsea Parking Garage ("Garage") in Manhattan. Viewing the evidence presented at trial in the light most favorable to the jury's finding of guilt, as we must in this challenge to the sufficiency of the evidence, *see United States v. Sirois*, 87 F.3d 34, 36 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 328, 136 L.Ed.2d 241 (1996), the facts are as follows.

The Garage is located at 170 West 23rd Street. Twenty-third Street is a major east-west thoroughfare easily accessible from both the Holland and Lincoln Tunnels. The Garage has between 100 and 105 parking spots, approximately 80 of which are reserved for customers who enter into monthly parking contracts. At the time of the robberies at issue in this case, approximately 35 to 40 of these monthly customers parked cars bearing out-of-state license plates, mostly from New Jersey and Connecticut. Many of these customers, however, lived or worked in New York. About 20 percent of the daily customers who parked at the Garage drove cars bearing out-of-state license plates, again primarily from New Jersey and Connecticut.

The first robbery of the Garage took place on April 15, 1995. Sandro Santos, the lone parking attendant working at the Garage that evening, testified that three men entered the Garage around 10:00 p.m. Two of them approached his office, and one of the men kicked the office door open. The man whom Santos later identified as Farrish rushed in, took $60 from Santos's pockets, and removed $500 from a desk drawer. Santos was ordered into the bathroom by one of Farrish's confederates. After the three men had left the Garage, Santos discovered that a black BMW 750IL was missing.

The following day, Michael Barnett, a confidential government informant, contacted Farrish and asked him if he could procure a Mercedes–Benz for a customer Barnett claimed to have lined up. Farrish told Barnett that he could not, but that he could provide him with a black BMW. Under the direction of the Federal Bureau of Investigation ("FBI"), Barnett arranged to meet Farrish and to purchase the BMW for $5,500. On April 19, accompanied by an FBI agent, Barnett drove to meet Farrish. He handed Farrish the money and took possession of the car. It was the same vehicle stolen from the Garage the night of April 15.

On April 30, 1995, the Garage was again robbed, this time losing three cars. This robbery was similar to the April 15 robbery. Two men entered the Garage during the early morning hours. One of them kicked in the parking attendant's office door and pushed attendant Vincent Sarmiento to the wall. One of the men brandished a knife and the other a gun. Sarmiento was pushed into the bathroom. When he emerged later, the robbers were gone, and so were an Acura, an Audi, and a Mercedes–Benz. Both Santos and Sarmiento later identified Farrish from a police photographic array as one of the men who had robbed the Garage.[2] Police arrested Farrish on September 12, 1995.

---

1. The Hobbs Act provides in pertinent part that: Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.
18 U.S.C. § 1951(a).

2. At trial, however, Sarmiento was unable to identify Farrish.

## II.

By its terms, the Hobbs Act applies to any person who "in any way or degree obstructs, delays, or affects commerce ... by robbery or extortion." 18 U.S.C. § 1951(a). Its reach has been held to be coextensive with that of the Commerce Clause of the United States Constitution.[3] *See Stirone v. United States*, 361 U.S. 212, 215, 80 S.Ct. 270, 271, 4 L.Ed.2d 252 (1960). Appellant argues that the Commerce Clause requires more than a *de minimis* effect on interstate commerce to trigger Hobbs Act jurisdiction, and that the evidence in this case was insufficient to meet that standard. Appellant's claim that *Lopez* changed the jurisdictional requirement of the Hobbs Act presents a question of law that we review *de novo, see United States v. Castleberry*, 116 F.3d 1384, 1387 (11th Cir.1997) (concluding "as a matter of law" that Hobbs Act requires only minimal effect upon interstate commerce), as we do his challenge to the sufficiency of the evidence, *see United States v. Leslie*, 103 F.3d 1093, 1100 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 1713, 137 L.Ed.2d 837 (1997).

Our cases have long recognized that "[t]he jurisdictional requirement of the Hobbs Act may be satisfied by a showing of a very slight effect on interstate commerce. Even a potential or subtle effect on commerce will suffice." *United States v. Angelilli*, 660 F.2d 23, 35 (2d Cir.1981) (internal citations omitted); *see also United States v. Jones*, 30 F.3d 276, 285 (2d Cir.1994) (holding that Hobbs Act jurisdiction is established by illegal interference "in any manner whatever with interstate commerce, even when the effect of such interference or attempted interference is minimal"); *Jund v. Town of Hempstead*, 941 F.2d 1271, 1285 (2d Cir.1991) (stating that "any interference with or effect upon interstate commerce, whether slight, subtle or even potential ... is sufficient to uphold a prosecution under the Hobbs Act").

Appellant, however, contends that the Supreme Court's decision in *Lopez*, which held that the Gun–Free School Zones Act, 18 U.S.C. § 922(q)(1)(A) ("Section 922(q)"), unconstitutionally exceeded Congress's power under the Commerce Clause, *Lopez*, 514 U.S. at 561, 115 S.Ct. at 1631, compels this Court to read the jurisdictional element of the Hobbs Act as requiring a heightened showing of an effect on interstate commerce. In *United States v. Leslie*, we addressed a similar *Lopez*-based challenge to a federal money laundering statute.[4] We noted that the Hobbs Act's jurisdictional standard is *de minimis*, and we explained that "[s]ince *Lopez*, courts interpreting the Hobbs Act (from which the money laundering statute derived its language) have continued to hold that *Lopez* did not affect this *de minimis* standard." *Leslie*, 103 F.3d. at 1100. Accordingly, we held that *Lopez* had not altered the money laundering statute's analogous jurisdictional element. *Id.* We now expressly hold that *Lopez* did not raise the jurisdictional hurdle for bringing a Hobbs Act prosecution. As suggested in *Leslie*, our sister Circuits that have addressed this question have all so held. *See Castleberry*, 116 F.3d at 1387 (11th Cir.1997); *United States v. Harrington*, 108 F.3d 1460, 1467 (D.C.Cir.1997); *United States v. Atcheson*, 94 F.3d 1237, 1241–43 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1096, 137 L.Ed.2d 229 (1997); *United States v. Bolton*, 68 F.3d 396, 398–99 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996); *United States v. Stillo*, 57 F.3d 553, 558 n. 2 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 383, 133 L.Ed.2d 306 (1995).

The statute at issue in *Lopez* represented a generalized attempt by Congress to regulate gun possession in the vicinity of schools, without regard to whether individual instances of gun possession were connected in some way to interstate commerce. The Court emphasized that Section 922(q) "contain[ed] no jurisdictional element which would ensure, through case-by-case inquiry, that the [crimi-

---

3. The Commerce Clause grants Congress the power to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3.

4. The money laundering statute challenged in *Leslie*, 18 U.S.C. § 1956(a)(3)(B), applies to financial transactions which "in any way or degree affect[ ] interstate or foreign commerce." *See Leslie*, 103 F.3d at 1100 (quoting 18 U.S.C. § 1956(c)(4)).

nal act] in question affects interstate commerce." *Lopez,* 514 U.S. at 561, 115 S.Ct. at 1631. The Court distinguished it from a federal gun possession statute that it had previously upheld in *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), noting that unlike the statute in *Bass,* Section 922(q) "has no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Lopez,* 514 U.S. at 561, 115 S.Ct. at 1631. In sharp contrast to the statute at issue in *Lopez,* the Hobbs Act does contain just such a jurisdictional element that "limit[s] its reach" to a "discrete set" of robberies or acts of extortion that have an "explicit connection with or effect on interstate commerce." That is, the Act is not directed to all robberies and acts of extortion on a theory that all such acts affect interstate commerce, but rather, by its terms, it applies only to those acts which themselves can be shown to affect interstate commerce. In sum, the Court in *Lopez* itself distinguished statutes such as the Hobbs Act which require a particularized jurisdictional showing. We find nothing in *Lopez* to suggest that the Court intended to heighten the threshold for establishing jurisdiction under such statutes. Accordingly, we reaffirm that to satisfy the jurisdictional element of the Hobbs Act, the Government need only show a "minimal" effect on interstate commerce. *See Jones,* 30 F.3d at 285.[5]

■ In the instant case, we find that the Government presented the jury with sufficient evidence to establish Hobbs Act jurisdiction. In reviewing a claim of insufficient evidence, we view the evidence "in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government, and may overturn the conviction only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hernandez,* 85 F.3d 1023, 1030 (2d Cir.1996). The evidence presented at trial showed that the Garage regularly served cars bearing out-of-state license plates, mostly from New Jersey and Connecticut, and that the Garage is located near major access routes for cars crossing state lines. The jury could easily have drawn the inference that the Garage is utilized by commuters and others traveling to and from Manhattan across state lines, and that robberies of cars from the Garage could discourage such travel. The evidence was more than sufficient to establish a "minimal" effect on interstate commerce and therefore to satisfy the jurisdictional element of the Hobbs Act.

We have considered all of appellant's other claims, and we find them to be without merit.

### III.

We conclude that the Supreme Court's decision in *Lopez* did not alter the showing required to satisfy the jurisdictional element of the Hobbs Act, and that the evidence put forward by the Government in this case was sufficient to establish Hobbs Act jurisdiction.

Accordingly, the judgment of conviction is affirmed.

---

5. Our cases have made clear that while the jurisdictional threshold is minimal, the Government still must offer some evidence of an effect on interstate commerce. *See Leslie,* 103 F.3d at 1103 ("There is nothing more crucial, yet so strikingly obvious, as the need to prove the jurisdictional element of a crime."). Where the Government has failed to present any such evidence, we have of course found that the jurisdictional element has not been satisfied. *See, e.g., United States v. Pinckney,* 85 F.3d 4, 7 (2d Cir.1996) (reversing a conviction under the Anti Car Theft Act where "[t]he government failed to produce any evidence, circumstantial or otherwise, of a connection between [the defendant's] activity and interstate commerce"); *Leslie,* 103 F.3d at 1102–03 (reversing conviction on one of two counts of violating the federal money laundering statute because, as to that count only, there was no evidence of an effect on interstate commerce).