**UNITED STATES of America,
Appellee,**

v.

**Jabril SHAREEF, Defendant–
Appellant.**

**No. 98–1606.**

United States Court of Appeals,
Second Circuit.

Argued June 28, 1999.

Decided Sept. 1, 1999.

Martin J. Littlefield, Assistant United States Attorney, Buffalo, New York (Denise E. O'Donnell, United States Attorney for the Western District of New York, Buffalo, New York, on the brief), for Appellee.

Vincent E. Doyle III, Buffalo, New York (Connors & Vilardo, Buffalo, New York on the brief), for Defendant-Appellant.

Before: KEARSE, STRAUB, and POOLER, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Jabril Shareef appeals from a judgment entered in the United States District Court for the Western District of New York following a jury trial before William M. Skretny, *Judge*, convicting him of extortion and attempted extortion, in violation of 18 U.S.C. § 1951 (1994) (the "Hobbs Act"), mail fraud, in violation of 18 U.S.C. § 1341 (1994), and conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371 (1994). Shareef was sentenced principally to 30 months' imprisonment, to be followed by a three-year term of supervised release. On appeal, he contends principally that the government failed to present sufficient evidence to prove the interstate commerce element of a Hobbs Act offense. He also contends that he received constitutionally ineffective assistance from his trial counsel, that he was denied a fair trial by reason of prosecutorial misconduct, and that his sentence was improperly enhanced on the ground that he committed perjury at trial. For the reasons that follow, we find no basis for reversal.

## I. BACKGROUND

The present prosecution arose out of a 1991–92 contract for the interior demolition of city buildings in Buffalo, New York (the "Buffalo project"). The contract was put out for bids by the State of New York in cooperation with the Buffalo Municipal Housing Authority. Bidders were required to ensure, *inter alia,* that all employees would be paid New York's "Prevailing Wage Rate." By statute, New York requires contractors on public work projects to pay "laborers, workmen or mechanics" at least the prevailing rate of wages. N.Y. Labor L. § 220(3) (McKinney Supp.1999). The prevailing rate of wages is "the rate of wage paid in the locality ... by virtue of collective bargaining agreements between bona fide labor organizations and employers of the private sector ... in the same trade or occupation." N.Y. Labor L. § 220(5)(a). The contract was awarded to Integrated Waste Special Services ("IWSS") as general contractor; IWSS subcontracted part of the work to a business owned by Shareef. Shareef was informed that employees must be paid the Prevailing Wage Rate.

Shareef and his business associate James Nelson, who supervised Shareef's work crews on the Buffalo project, were charged with failing to pay Shareef's laborers the Prevailing Wage Rate, by means of conduct that violated, *inter alia,* the Hobbs Act, 18 U.S.C. § 1951. The Hobbs Act substantive count of the indictment alleged that Shareef and Nelson

> did knowingly, willfully and unlawfully obstruct, delay and affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion, and did attempt to do so, in that the defendants did unlawfully take and obtain property, namely money, from persons, namely employee laborers, with their consent, such consent being induced by the wrongful use of fear of economic loss.

The evidence at the joint trial of Shareef and Nelson, taken in the light most favorable to the government, included testimony by Shareef's office manager and by more than a dozen of his laborers on the Buffalo project that instead of paying each laborer the required gross wage of $21.89 per hour, Shareef paid them $6–to–$10 per hour. Shareef forced the laborers to endorse their paychecks without reading the amounts, and he then paid them in cash at the lower rates. When employees complained to Shareef that they were being underpaid, he threatened to fire them.

Shareef, in his own defense, testified, *inter alia,* that he had believed everyone on the Buffalo project was being paid $21.89 per hour; that all of the employees were paid by check and no one received cash; and that no laborer ever complained to him about being underpaid. Nelson also testified in his own defense; he denied any knowing involvement in the extortion and fraud. On cross-examination by the government, Nelson admitted having stated to law enforcement agents that he had participated in the fraud and that Shareef had devised the fraudulent scheme; Nelson testified that that statement was true.

The jury convicted both defendants on all counts, to wit, mail fraud, Hobbs Act extortion, and conspiracy to commit those offenses. Shareef was sentenced as indicated above, and this appeal followed.

## II. DISCUSSION

On appeal, Shareef challenges the sufficiency of the evidence to support his conviction of Hobbs Act extortion, contending that the government failed to prove the requisite effect on interstate commerce. Shareef also contends that his trial counsel rendered ineffective assistance by not moving for a severance of his trial from that of Nelson; that the Assistant United States Attorney ("AUSA") deprived him of a fair trial by posing improper questions to him on cross-examination and making unfair arguments in summation; and that the district court improperly enhanced his sentence by increasing his offense level on the

ground that his trial testimony was perjurious. We reject all of these contentions.

A. *Sufficiency of the Evidence of Interstate Commerce*

Shareef advances several contentions in support of his challenge to the sufficiency of the evidence to establish the interstate commerce element of the substantive Hobbs Act charge against him. He contends principally (a) that because the indictment "charged that Shareef affected interstate commerce by obtaining money from the laborers," the government was required to prove "that it was the theft of money from the laborers that affected interstate commerce" (Shareef brief on appeal at 16), but that there was no proof of such a direct effect, for Shareef's "company and all of its employees were New York State residents," and "[n]one of the laborers, who were the victims of the alleged extortion, testified that they had any connection to interstate commerce" (*id.* at 9); (b) that the government could not be permitted to satisfy its burden by proving instead an impact on IWSS because, Shareef argues, that proof would constitute an impermissible variance from the indictment; and (c) that, in any event, the evidence as to the impact on IWSS was insufficient because no "actual[ e]ffect" on IWSS was shown (*id.* at 10; *see also id.* at 17 ("IWSS [did not] offer any evidence of any ... injury that it, in fact, suffered")), and a potential effect is, he contends, insufficient to support a substantive Hobbs Act charge. We reject these contentions, which are based on misconceptions of Hobbs Act principles.

■ The Hobbs Act, to the extent pertinent here, makes it unlawful "in any way or degree" to "obstruct[ ], delay[ ], or affect[ ] commerce or the movement of any article or commodity in commerce, by robbery or extortion" or to "attempt[ ] or conspire[ ] so to do." 18 U.S.C. § 1951(a). As recently discussed by this Court in *United States v. Arena*, 180 F.3d 380 (2d Cir.1999) ("*Arena* "), although a Hobbs Act

conviction cannot be sustained if the government failed to prove that " 'commerce [wa]s affected,' " *Arena*, 180 F.3d at 389 (quoting *Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960)), "it is well established that the burden of proving such a nexus is '*de minimis*,' " *Arena*, 180 F.3d at 389 (quoting *United States v. Farrish*, 122 F.3d 146, 148 (2d Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1056, 140 L.Ed.2d 118 (1998)). " '*Even a potential or subtle effect on commerce will suffice.*' " *Arena*, 180 F.3d at 389 (quoting *United States v. Angelilli*, 660 F.2d 23, 35 (2d Cir.1981), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (1982)) (emphasis ours); *see, e.g., Jund v. Town of Hempstead*, 941 F.2d 1271, 1285 (2d Cir.1991) ("any interference with or effect upon interstate commerce, whether slight, subtle or even potential ... is sufficient to uphold a prosecution under the Hobbs Act").

■ Although Shareef argues that proof of a potential effect on commerce suffices only with respect to a charge of Hobbs Act conspiracy, not a charge of substantive violation, he is mistaken. We have applied the above principles in upholding convictions not only for conspiracy, *see, e.g., Arena*, 180 F.3d at 389–90, but also for Hobbs Act substantive offenses, *see, e.g., id.*; *United States v. Farrish*, 122 F.3d at 148; *United States v. Angelilli*, 660 F.2d at 35. Accordingly, Shareef's contention that only an actual, not a potential, effect on commerce can suffice to sustain a substantive Hobbs Act charge is squarely contradicted by our precedents.

■■ Further, "[w]e have never held that an indictment alleging a violation of the Hobbs Act must specify the precise nature of the effect upon interstate commerce that the government intends to prove at trial...." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir.1998). Nor need the government prove that the impact on interstate commerce was intentional, *see, e.g., United States v. Daley*, 564

F.2d 645, 649 (2d Cir.1977) (proof of intent to interfere with interstate commerce unnecessary where such interference was one of the natural effects of the offense), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978), or that the effect on commerce was direct rather than indirect, *see, e.g., United States v. Farrish,* 122 F.3d at 149 (interstate commerce element proven by evidence that robbed garage, located near interstate portals, "regularly served cars bearing out-of-state license plates," permitting inference that the robberies might discourage out-of-state business); *United States v. Jones,* 30 F.3d 276, 284–85 (2d Cir.) (effect on commerce is sufficient "even though the effect is not immediate or direct or significant, but instead is postponed, indirect and slight"), *cert. denied,* 513 U.S. 1028, 115 S.Ct. 602, 130 L.Ed.2d 513 (1994); *see also United States v. Millet,* 123 F.3d 268, 274 (5th Cir.1997) ("When an indictment under the Hobbs Act is drawn in general terms, a conviction may rest on a showing that commerce of one kind or another has been burdened.... It follows that when the indictment is drawn generally, the government may offer proof that the act either directly or indirectly affected interstate commerce."), *cert. denied,* —— U.S. ——, 118 S.Ct. 1306, 140 L.Ed.2d 471 (1998).

■ In the present case, as quoted in Part I above, the indictment specified the conduct in which Shareef was alleged to have engaged, to wit, extorting money from his laborers; and it alleged generally that that conduct obstructed, delayed, and affected interstate commerce. The indictment did not purport to specify the nature of the effect on commerce. Thus, the government was free to show that Shareef's extortionate underpayments to the laborers had the potential for impeding either activities of the laborers in interstate commerce or IWSS's operations in interstate commerce.

■ Finally, we reject Shareef's suggestion that the government's evidence was insufficient to show even a potential effect on IWSS's interstate business. In reviewing a challenge to the sufficiency of the evidence to support a conviction, we "view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." *United States v. Allah,* 130 F.3d 33, 45 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2347, 141 L.Ed.2d 718 (1998).

At trial, James F. Williams, a vice president of IWSS and the chairman and chief executive officer of IWSS's parent, testified that during the period of work on the Buffalo project, IWSS, which had an office in Houston, Texas, was engaged in several other jobs outside of New York State; he authenticated IWSS documents reflecting, *inter alia,* its business with municipal agencies in Ohio and Texas. Williams testified that with respect to the Buffalo project, IWSS had ultimate responsibility for the proper payment of all employees; that Shareef's underpayments to the laborers had resulted in allegations by the New York State Department of Labor not only against Shareef's company but also against IWSS; that the Department of Labor had 'moved against' IWSS; and that the allegations against IWSS could have hindered IWSS's ability to, *inter alia,* obtain payment and performance bonds and to be prequalified for other out-of-state contracts. Viewed in the light most favorable to the government, therefore, this evidence was sufficient to show that Shareef's conduct had the potential effect of diminishing IWSS's interstate business.

In sum, where there is evidence that (a) the general contractor was ultimately responsible for ensuring that contract laborers, even those hired by a subcontractor, were paid in accordance with law, (b) the subcontractor extorted from his laborers part of their proper wages, thereby unlawfully underpaying them, and (c) the ability of the general contractor to conduct its interstate business was jeopardized by official allegations, and the ensuing investi-

gation, against it resulting from the subcontractor's extortionate underpayment of wages, that evidence is sufficient to satisfy the interstate commerce element of the Hobbs Act.

## B. *Other Contentions*

### 1. *The Performance of Counsel*

■■ To establish a claim of ineffective assistance of counsel, a defendant must show that his attorney's performance "fell below an objective standard of reasonableness," and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Shareef contends that he received ineffective assistance of trial counsel principally because his attorney failed to review a pretrial statement by Nelson, despite its inclusion in a pretrial list of documents given to defense counsel by the government, and hence failed to move for a severance of his trial from that of Nelson. Shareef contends that his and Nelson's defenses were sharply antagonistic, and, citing *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), and *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), he argues that the joint trial "permitted the jury considering charges against Shareef to hear the testimony of Nelson, particularly as to the pre-trial statements made by [Nelson] to the government agent. These statements, incriminating Shareef, would not have been admissible against [Shareef] at a separate trial." (Shareef brief on appeal at 28.) Although we do not suggest that making tactical decisions without rudimentary preparation constitutes reasonable performance by counsel, we conclude for several reasons that Shareef cannot show that had his attorney moved for a severance the result would have been different.

■■ First, in the federal system, there is a preference for the joint trial of defendants indicted together; thus, the district court should grant a severance motion only if there is a serious risk that a joint trial would compromise a specific trial right of the moving defendant or prevent the jury from making a reliable judgment about guilt or innocence. *See Zafiro v. United States,* 506 U.S. 534, 537, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). A severance need not be granted simply because codefendants have made incriminating statements.

> It would impair both the efficiency and the fairness of the criminal justice system to require, in ... cases of joint crimes where incriminating statements exist, that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability.... Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

*Richardson v. Marsh,* 481 U.S. at 210, 107 S.Ct. 1702. Here, the defenses asserted by Shareef and Nelson were not necessarily irreconcilable. Each simply denied knowing that the laborers were being underpaid. In theory, therefore, it was possible that neither man was involved and that the underpayments were fraudulently perpetrated on the laborers by some other official in Shareef's company who had payroll responsibilities. Further, to the extent that an out-of-court inadmissible statement by one supposedly unknowing codefendant accused the other of being the culprit, that accusation could have been redacted for a joint trial. *See generally id.*

at 208–09, 107 S.Ct. 1702. Accordingly, we see no likelihood that a severance motion would have been granted.

Further, Shareef's premise that Nelson's "statements, incriminating Shareef, would not have been admissible against [Shareef] at a separate trial" (Shareef brief on appeal at 28), is unsound. The *Bruton* and *Richardson* cases on which Shareef relies concerned hearsay declarations of codefendants who chose not to testify at trial. The flaw in those circumstances, of course, is that the defendant about whom the codefendant has made a statement cannot cross-examine the codefendant. In the present case, however, Nelson did testify at trial and therefore was available for cross-examination by Shareef. Testimony by Nelson that Shareef devised the underpayment scheme was obviously relevant, and it plainly would have been admissible in a trial of Shareef alone. Further, given the facts that Nelson testified at the joint trial though he could not have been compelled to do so, and that on cross-examination by the government he confirmed the truth of his prior statement inculpating Shareef, we cannot infer that Nelson would have refused to testify against Shareef if Shareef had been tried separately. Accordingly, we see no basis for inferring that any of the testimony before the jury at the joint trial would not have been forthcoming at a trial of Shareef alone.

Finally, we note that even if Nelson's testimony had not been before the jury, the other evidence against Shareef, which included the testimony of at least 14 laborers and of Shareef's office manager who had payroll responsibilities and acted on Shareef's instructions to facilitate and conceal the underpayments, was overwhelming. We conclude that Shareef's claim of ineffective assistance of counsel for failure to request a severance, whether that failure be viewed in isolation or in combination with the other deficiencies alleged by Shareef on this appeal, provides no basis for a new trial.

### 2. *The Conduct of the Prosecutor*

 Shareef also contends that he is entitled to a new trial because the AUSA asked him improper questions on cross-examination and made unfair arguments in summation. We are unpersuaded.

 Prosecutorial misconduct is a ground for reversal only if it causes the defendant "substantial prejudice," *United States v. LaMorte*, 950 F.2d 80, 83 (2d Cir.1991), *cert. denied*, 504 U.S. 909, 112 S.Ct. 1938, 118 L.Ed.2d 544 (1992), by "so infect[ing] the trial with unfairness as to make the resulting conviction a denial of due process," *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (internal quotation marks omitted). Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute "egregious misconduct." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). In assessing whether the comments complained of meet this test, we consider "the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct." *United States v. Melendez*, 57 F.3d 238, 241 (2d Cir.1995) (summation); *see also United States v. McCarthy*, 54 F.3d 51, 55 (2d Cir.) (same standard for improper questions in cross-examination), *cert. denied*, 516 U.S. 880, 116 S.Ct. 214, 133 L.Ed.2d 145 (1995). Even where a prosecutor's argument was clearly impermissible, we have been reluctant to reverse where the transgression was isolated, the trial court took swift and clear steps to correct the implication of the argument, and the evidence against the defendant was strong. *See, e.g., United States v. Cruz*, 797 F.2d 90, 93 n. 1 (2d Cir.1986) (in light of the record, the argument as a whole, and the curative instructions, prosecutor's statement that "[t]he defense ... has to convince you," although improper, was held not to require reversal (internal quotation marks omitted)).

In the present case, within this framework, we see no basis for reversal. Our review of the record does not persuade us that the prosecutor's comments inappropriately disparaged Shareef's credibility or misrepresented the case to the jury. Although the deportment of the AUSA seems on occasion to have left something to be desired, the trial court promptly admonished him in those instances. Further, although the AUSA's asking Shareef whether he could produce certain checks, and the AUSA's summation "challenge" to "defense counsel to explain ... how the off-the-book employees got paid" were improper insofar as they suggested that Shareef had any burden to come forward with evidence in his defense, these transgressions were isolated; the trial court upheld Shareef's objections, and the court later instructed the jury clearly and repeatedly that the government bore the burden of proof and that that burden "never" shifted. In any event, the evidence against Shareef was sufficiently strong that, to the extent that there was any prosecutorial misconduct, we cannot conclude that it caused Shareef prejudice or warrants a new trial.

We also reject Shareef's contention that he was denied a fair trial by the AUSA's argument to the jury that, if it believed Shareef's testimony, it had to conclude that other witnesses were lying. It is of course inappropriate for the prosecutor to make a summation that is inflammatory. *See, e.g., United States v. Gonzalez*, 488 F.2d 833, 836 (2d Cir.1973) (reversing because of "combination of" error in the instructions, and inflammatory summation arguments that "you have to be born yesterday" to believe appellant's defense and that the defense is "an insult to your intelligence" (internal quotation marks omitted)); *United States v. Drummond*, 481 F.2d 62, 64 (2d Cir.1973) (condemning argument that defendant's "testimony is so riddled with lies it insults the intelligence of 14 intelligent people sitting on the jury" and reversing because of that error in

combination with others (internal quotation marks omitted)). But while we have reversed because of a prosecutor's argument "that, if the defendant is innocent, government agents must be lying," *United States v. Richter*, 826 F.2d 206, 209 (2d Cir.1987), we have noted that it is not ordinarily improper for the prosecution to make temperate use of forms of the word "lie" to highlight evidence directly conflicting with the defense's testimony, or "to characterize disputed testimony" where credibility was clearly an issue, particularly where "the prosecutor tied to the pertinent evidence of record" each instance in which the defendant supposedly "lied," *United States v. Peterson*, 808 F.2d 969, 977 (2d Cir.1987) (reversing on other grounds). Thus, in *United States v. Durrani*, 835 F.2d 410 (2d Cir.1987), we found no misconduct in prosecutor's stating, "if Mr. Durrani is telling you the truth in his most recent statement from the witness stand, Mr. Doyle is lying, Mr. Spreeuwenberg is lying, Mr. Moosa is lying, the bank records are lying, Mr. Arruda is lying about the statement, C.I.A. is lying to you, the National Security Council is lying to you, Mr. Newborn is lying to you." *Id.* at 424 (internal quotation marks omitted).

In his summation in the present case, the AUSA seriatim reviewed the pertinent testimony of Shareef's office manager and several underpaid laborers, juxtaposed each witness's testimony with contrary testimony by Shareef, and stated to the jury, "If you believe Shareef," the (named) witness "had to lie." We are unpersuaded that this argument constituted misconduct.

### 3. The Enhancement for Perjury

Finally, we find no merit in Shareef's challenge to his sentence. Section 3C1.1 of the Sentencing Guidelines ("Guidelines") provides for an increase in a defendant's offense level if the sentencing court finds that the defendant willfully obstructed or attempted to obstruct justice. *See, e.g.,* Guidelines § 3C1.1 Application Notes 3(b) and (f) ("committing ... perju-

ry" or "providing materially false information to a judge"); *see also United States v. Dunnigan,* 507 U.S. 87, 98, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (when the district court has "proper[ly] determin[ed] that the accused has committed perjury at trial, an enhancement of sentence is required").

In the present case, Shareef gave detailed testimony at trial that was directly and irreconcilably contradicted by the testimony of at least 15 witnesses. The district court found that "there is no basis in the record for me to find that defendant's false testimony resulted from confusion, mistake, or faulty memory, even evaluating those statements in the light most favorable to him." The obstruction of justice enhancement was proper.

## CONCLUSION

We have considered all of Shareef's contentions on this appeal and have found in them no basis for reversal. The judgment of conviction is affirmed.