21-1896(L); 21-2244
*United States v. Green*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of January, two thousand twenty-four.

**PRESENT:**
> **GUIDO CALABRESI,**
> **ALISON J. NATHAN,**
>> *Circuit Judges.*
> **PAUL A. ENGELMAYER,**
> > *District Judge.***

_____

**United States of America,**

> *Appellee,*

> **v.**                                                                    **Nos. 21-1896 (L),**
>                                                                           **21-1923 (con);**
>                                                                           **No. 21-2244**

_____

*Judge Paul A. Engelmayer, of the United States District Court for the Southern District of New York, sitting by designation.

**Latique Johnson, Ines Sanchez, AKA Meth, Donnell Murray, AKA Don P, Thomas Morton, AKA 10 Stacks, Saeed Kaid, AKA O-Dog, Eric Grayson, AKA Gistol, Marques Cannon, AKA Paper Boy, Manuel Rosario, AKA Top Dolla, Michael Evans, AKA Puff, Terrell Pinkney, Patrick Daly, David Cherry, AKA Showtime,**

*Defendants,*

**Brandon Green, AKA Light, AKA Moneywell,**

*Defendant-Appellant.*\*

_____

FOR DEFENDANT-APPELLANT:     JAMES KOUSOUROS (Stuart Gold *on the brief*), Law Office of James Kousouros, New York, NY.

Brandon Green, pro se.

FOR APPELLEE:     ANDREW K. CHAN (Jessica Feinstein, Allison Nichols, Stephen J. Ritchin, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

_____

\*The Clerk of Court is directed to amend the caption as set forth above.

\*    \*    \*

Appeal from a judgment of the United States District Court for the Southern District of New York (Gardephe, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Brandon Green appeals from a July 26, 2021 judgment of the United States District Court for the Southern District of New York (Gardephe, *J.*) following his conviction for racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count One); conspiracy to distribute and possess with intent to distribute cocaine, crack cocaine, heroin, and marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(D) (Count Four); and using and carrying firearms during and in relation to, and possessing firearms in furtherance of, the narcotics conspiracy, as well as aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 (Count Five). The district court sentenced Green to a term of 295 months imprisonment followed by 10 years of supervised release and a $300 mandatory special assessment.

In these appeals heard in tandem, Green raises numerous challenges to the district court's rulings during and after trial, and to his convictions. Green is represented by counsel in two consolidated cases, but has raised additional arguments in supplemental briefing, and in a third appeal he is proceeding pro se. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## I. Counseled Claims

### A. Sufficiency of the Evidence for Firearms Offense

Beginning with Green's counseled claims, he challenges the sufficiency of the evidence underlying his conviction on Count Five, the firearms offense related to the narcotics conspiracy charged in Count Four. Sufficiency of the evidence challenges are reviewed *de novo*, "but defendants face a heavy burden, as the standard of review is exceedingly deferential." *United States v. Baker*, 899 F.3d 123, 129 (2d Cir. 2018) (cleaned up). "[W]e must view the evidence in the light most favorable to the Government, crediting every inference that could have been drawn in the Government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States*

4

*v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015) (cleaned up). Moreover, "[w]e will sustain the jury's verdict if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Pierce*, 785 F.3d 832, 838 (2d Cir. 2015) (cleaned up).

Green alleges that the "only evidence of drug trafficking committed by [him]" that supports his conviction for the charged narcotics conspiracy is "the April 2017 marijuana texts" between Green and an individual named Rube. Appellant's Br. at 42–43. Cell phones containing those text messages, as well as drug paraphernalia and various firearms, were recovered in a May 16, 2017 search of Green's apartment after the federal charges against Green and his co-defendants were unsealed. That evidence is insufficient for his firearm conviction, according to Green, because "there is no evidence that Green was associated" with the Blood Hound Brims (BHB) gang after the middle of 2016 and "there is no evidence that Rube was ever associated with the BHB." *Id.* at 43. As a result, Green claims there is no gun-drug nexus and that no rational jury could "find that the guns found in May 2017 advanced a hard drug operation" that he alleges ended years prior. *Id.* We reject Green's argument.

A conviction under § 924(c) "requires the government to establish a 'nexus' between the charged firearm and the charged drug selling operation." *United States v. Willis*, 14 F.4th 170, 184 (2d Cir. 2021) (citation omitted). "That nexus is established where the firearm afforded some advantage (actual or potential, real or contingent) to the drug trafficking." *Id.* (cleaned up). If the "charged weapon is readily accessible to protect drugs, drug proceeds, or the dealer himself," § 924(c) applies. *Id.* Notably, § 924(c)'s "language sweeps broadly, punishing any use of a firearm so long as the use is during and in relation to a drug trafficking offense." *Smith v. United States*, 508 U.S. 223, 229 (1993) (cleaned up).

Sufficient evidence was presented to the jury establishing the requisite gun-drug nexus to support Green's § 924(c) conviction. Contrary to Green's argument, it is not evident that the jury based its § 924(c) conviction solely on the guns seized in the search of Green's apartment. That is because additional evidence was presented to the jury establishing that Green used a gun in furtherance of or in relation to the charged narcotics conspiracy at earlier dates. For example, the Government presented testimony that in 2011, Green gave an individual named Adams about 60 grams of cocaine and a handgun, from which the jury could

6

reasonably conclude that Green gave Adams the cocaine to sell and the gun to use in furtherance of that crime. Furthermore, another witness named Jones testified that Green's role in the gang was to "provide[] drugs[ and] guns" and that Green was seen in possession of a gun. App'x at 453.

## B. Constructive Amendment or Prejudicial Variance

Green also claims that the terms of the indictment were constructively amended or that there was a prejudicial variance when the government entered the evidence from the May 2017 search. Green alleges that the text messages between him and Rube concern a marijuana conspiracy separate from the narcotics conspiracy charged because Rube "had no connection to the BHB." Appellant's Br. at 49. Moreover, the predicate crime for Green's § 924(c) conviction was only the charged narcotics conspiracy, as the jury acquitted Green of a § 924(c) charge predicated on the racketeering conspiracy. Green alleges that the May 2017 evidence—the text messages, drug paraphernalia, and guns—was "[t]he only alleged drug-related evidence against Green that was unconnected to the [racketeering] conspiracy." Appellant's Reply Br. at 3. Admitting that evidence, according to Green, "broadened the § 924(c) Count by allowing the jury to convict

Green of possessing guns to further the alleged [Green-Rube] marijuana trafficking," conduct for which he was not indicted, in addition to the charged narcotics conspiracy.  Appellant's Br. at 50.  We disagree.

As an initial matter, Green failed to object below to any constructive amendment or prejudicial variance.  Plain error review thus applies.  When reviewing for plain error, we consider whether "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  *United States v. Miller*, 954 F.3d 551, 557–58 (2d Cir. 2020) (citation omitted).

For his constructive amendment claim, Green must show that "the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify *essential elements* of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment."  *United States v. D'Amelio*, 683 F.3d 412, 416 (2d Cir. 2012) (citation omitted).  On the other hand, "[a] variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at

trial proves facts materially different from those alleged in the indictment." *United States v. Salmonese*, 352 F.3d 608, 621 (2d Cir. 2003) (quoting *United States v. Frank*, 156 F.3d 332, 337 n.5 (2d Cir. 1998)). For reversal on a variance claim, the defendant must demonstrate that the variance caused "substantial prejudice at trial." *United States v. McDermott*, 245 F.3d 133, 139 (2d Cir. 2001) (cleaned up).

Applying plain error review, this record does not demonstrate that either a constructive amendment or prejudicial variance occurred. As the Government identifies, both the narcotics conspiracy and racketeering conspiracy counts charged Green with selling marijuana, in addition to cocaine, crack cocaine, and heroin. The evidence at trial established that the BHB sold marijuana as part of the conspiracy, through BHB paperwork and testimony from former members. Moreover, evidence demonstrated that Green texted a contact named "Gotti" in April 2017 regarding a different individual's debt for marijuana. "Gotti" was a name that appeared in an address book found in Ines Sanchez's residence, a member of the BHB, along with other BHB member names. At trial, the Government presented the April 2017 texts between Gotti and Green, which discussed a debt someone owed to Green, just before presenting the April 2017

9

texts between Green and Rube regarding Rube's debt to Green from the marijuana transaction between the two. As a result of this evidence, the jury could reasonably have inferred that Green's texts with Rube regarding the debt owed, which Green alleges were about a separate conspiracy, were actually related to Green's membership in the BHB and the charged narcotics conspiracy. The record does not support Green's argument that the marijuana conspiracy was separate and independent.

On plain error review, we see no error in the admission of the evidence and we observe no constructive amendment or prejudicial variance.[1]

## C. Ineffective Assistance of Counsel

Next, Green identifies several moments at trial that he claims rise to the level of ineffective assistance of counsel. Specifically, Green points to trial counsel's decision not to pursue certain defenses, move to suppress evidence, impeach or challenge witness testimony, and raise certain objections. Green especially

---

[1] Relatedly, Green argues that should we reverse his § 924(c) conviction, we would be obligated to vacate his convictions under § 846 and § 1962(d) based on spillover prejudice. Because we do not reverse Green's § 924(c) conviction on sufficiency of the evidence or Fifth Amendment grounds, we similarly reject this argument. *See United States v. Coplan*, 703 F.3d 46, 92 (2d Cir. 2012).

identifies trial counsel's failure to object based on a constructive amendment or prejudicial variance when the May 2017 search evidence was admitted.

On direct appeal of Green's ineffective assistance of counsel claims, we "may (1) decline to hear the claim[s], permitting the appellant to raise the issue as part of a subsequent 28 U.S.C. § 2255 motion; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us." *United States v. Doe*, 365 F.3d 150, 152 (2d Cir. 2004) (cleaned up). "[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Given Green's acknowledged need for further fact-finding on his ineffectiveness claims, and the lack of an adequate record before us, especially as to Green's constructive amendment or prejudicial variance argument, we decline to address his ineffective assistance claims here.

**D. Rule 33 Motion**

Green argues that the district court erred when it denied his Federal Rule of Criminal Procedure 33 motion for a new trial. We review his claim for abuse of discretion, *United States v. Snype*, 441 F.3d 119, 140 (2d Cir. 2006), and see none

11

here. That is so because the district court's decision contains no errors of law and Green's convictions do not present an "extraordinary circumstance[]" warranting a new trial. *See United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001).

### E. Summation Errors

Green claims that six statements in the Government's summation amounted to a due process violation, depriving him of a fair trial. We reject Green's argument because he identifies brief and minor misstatements of the record in a complex conspiracy case. Nothing suggests that the remarks in summation here constituted "egregious misconduct" sufficient to grant a new trial. *See United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999).

### F. In-Court Identification

For his final counseled claim, Green argues that his due process rights were violated when one of the cooperating witnesses, Jones, was allowed to identify Green in court. Green claims that "Jones's viewing of Green at trial is the only possible explanation for how Jones was initially unable to make an in-court identification of Green," but then was later able to identify Green in court.

Appellant's Br. at 74. We review the admissibility of identification evidence for clear error. *United States v. Gershman*, 31 F.4th 80, 93–94 (2d Cir. 2022).

We observe no error here. That is because the record makes clear that Jones had prior experiences with Green, which would be sufficient for an in-court identification, and defense counsel was permitted to cross examine Jones regarding his in-court identification.[2]

## II. Pro Se Claims

### A. Sufficiency of the Evidence for Racketeering and Narcotics Conspiracies

In his pro se briefing, Green argues that the evidence was insufficient to support his underlying conviction on Count One, the racketeering conspiracy, and Count Four, the narcotics conspiracy.

As with the sufficiency challenge above, the Government's evidence presented on Green's racketeering and narcotics conspiracy counts was plainly sufficient to prove beyond a reasonable doubt that Green knowingly joined and participated in those conspiracies as a member of the BHB gang.

---

[2] Raising a cumulative error claim, Green also argues that the cumulative effect of the errors at trial denied him the right to a fundamentally fair trial. Because we observe no error, we reject this claim accordingly.

Five cooperating witnesses—Michael Adams, Thomas Morton, Rayshaun Jones, Kenneth Moore, and Manuel Rosario, members of the BHB—testified that: Green was a member of the gang; held various leadership positions; attended gang meetings; supplied and distributed drugs as a member of the gang; and was close with and had regular conversations with the gang leader, Latique Johnson. *See United States v. Zemlyansky*, 908 F.3d 1, 11 (2d Cir. 2018). Several witnesses also explicitly linked Green to the BHB's drug operations, identifying him as the BHB's chief supplier of "crack," cocaine, heroin, and marijuana. *See United States v. Barret*, 848 F.3d 524, 534–36 (2d Cir. 2017).

Given the substantial evidence presented on the racketeering and narcotics charges, we reject the claim that there was insufficient evidence for the jury to convict him of those crimes.

## B. Fourth Amendment

Green next argues that the district court erred when it denied his pretrial motion to suppress the evidence seized during the search of his Bridgeport, Connecticut apartment on May 16, 2017. The district court held an evidentiary hearing and credited the testimony of the Government's witnesses. Based on these

14

credibility determinations, the district court denied Green's motion to suppress and admitted the seized evidence.

On appeal, Green alleges that law enforcement entered his apartment illegally without a warrant and executed a pretextual and overextended protective sweep. He further claims that his girlfriend did not voluntarily consent to the search. We review Green's challenge to the "district court's findings of fact for clear error, and its resolution of questions of law and mixed questions of law and fact *de novo*," *United States v. Bohannon*, 824 F.3d 242, 247–48 (2d Cir. 2016), and observe no error here.

Even assuming that Green has not waived his argument that the officers illegally entered his apartment because they only possessed an arrest warrant by failing to raise it below, *see United States v. Yousef*, 327 F.3d 56, 126 (2d Cir. 2003), his claim would fail. Credited testimony from the hearing demonstrates that law enforcement reasonably believed Green was inside the apartment while executing the arrest warrant, granting the officers authority to enter. *See Payton v. New York*, 445 U.S. 573, 603 (1980) ("[A]n arrest warrant founded on probable cause implicitly

15

carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.").

Green also challenges law enforcement's protective sweep of his apartment, claiming that the officers lacked reasonable suspicion and exceeded the scope of the sweep. When making an arrest on private premises, law enforcement is permitted to search areas beyond the space immediately adjoining the place of arrest where there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 334 (1990).

Here, the district court did not clearly err when it determined that, based on the testimony presented at the suppression hearing, the officers validly conducted a protective sweep of the apartment, including the second floor, due to the risk of attack from that area. There were numerous articulable facts presented, including that the living room area was exposed "to possible fire from someone above," and that there was "no ceiling separating part of the living room from the bedroom." Supplemental App'x at 321. Nor is there merit in Green's other arguments, as the

16

protective sweep was not unreasonably long, and the incriminating evidence seized was in plain view. *See Buie*, 494 U.S. at 330.

Finally, Green argues that Jennifer Turcios, his girlfriend who also lived in the apartment, did not voluntarily consent to the search of the apartment beyond the protective sweep. A search authorized by voluntary consent is a well-recognized exception to the Fourth Amendment's prohibition on warrantless searches. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). When determining whether consent to search was voluntarily given, we consider the totality of the circumstances, but "the ultimate question presented is whether the officer had a reasonable basis for believing that there had been consent to the search." *United States v. Garcia*, 56 F.3d 418, 423 (2d Cir. 1995) (cleaned up).

Applying clear error review, we see no basis to disturb the district court's finding that Turcios voluntarily consented to the search. At the suppression hearing, Officer Eric Kushi testified that he asked Turcios for consent to search, he made no show of force, nor did he make Turcios believe she was in legal jeopardy or handcuff her. According to Officer Kushi, Turcios instantly consented to the search and stated she had no problem with it. Moreover, Turcios signed a consent

to search form which provided that she had a constitutional right not to have a search of the premises, and that she gave her consent "voluntarily and without any threats or promises of any kind." Supplemental App'x at 299. The district court thus committed no error when it denied Green's suppression motion.

### C. Prosecutorial Misconduct

Green claims that the proceedings against him were infected with prosecutorial misconduct and that he is entitled to vacatur of all his convictions and dismissal of his indictment. Green does not point to any record evidence demonstrating that the Government knowingly or recklessly misled the jury, which is the required showing for such an "extraordinary remedy," *United States v. Lombardozzi*, 491 F.3d 61, 79 (2d Cir. 2007) (cleaned up). We reject his argument accordingly.

### D. Ineffective Assistance of Counsel Claims Pre-Sentencing

Green argues that the district court abused its discretion when it vacated its initial decision to hear his ineffective assistance of counsel claims before sentencing, and later denied Green's motion to reconsider on the same issue. We

18

review his claim for abuse of discretion, and observe none here. *Cf. United States v. Brown*, 623 F.3d 104, 112 (2d Cir. 2010).

Green's challenge to the district court's order stems from his belief that he did not need to submit a form waiving his attorney-client privilege or an affidavit detailing the allegations against his three prior attorneys. Despite the district court permitting Green to raise his ineffective assistance of counsel claims before sentencing in a November 19, 2020 order, Green refused to submit the requisite forms. Green's continued failure to comply with the district court's requirement led the district court to inform Green, for a final time, that it could not "delay [Green's] sentencing forever" and that if Green wanted to proceed, he needed to submit the waiver form and affidavit by February 9, 2021. No. 21-2244 App'x at 37, 174. Once that deadline had passed, the district court reversed its prior decision and ordered that the parties proceed to sentencing.

As we have held, "district courts face competing considerations in deciding whether it is appropriate to inquire into the merits of [ineffective assistance of counsel] claims prior to judgment, including principally the potential disruption of the proceedings." *Brown*, 623 F.3d at 113. Here, the district court chose to avoid

19

"delay" and the "needless expenditure of judicial resources" in continuing to push back Green's sentencing. *See Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001). Green's steadfast refusal to comply with the district court's request ensured that sentencing would have been deferred into perpetuity. We therefore conclude that the district did not abuse its discretion when it denied Green the opportunity to raise his ineffective assistance of counsel claims before sentencing.

**E.  Recusal Motion**

Green additionally argues that the district judge demonstrated bias when he declined to hear Green's ineffective assistance of counsel claims pre-sentencing and therefore, he should have recused himself. "We review a district court's decision not to recuse itself for abuse of discretion," and "we will rarely disturb a district court's decision not to recuse itself." *United States v. Rechnitz*, 75 F.4th 131, 142 (2d Cir. 2023).

Under 28 U.S.C. § 455, a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned" or "[w]here he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a), (b)(1). Recusal under § 455(a) is evaluated "on an *objective* basis, so that what matters is not the

20

reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). In the recusal analysis, "we consider whether a reasonable person, knowing all the facts, would conclude that the trial judge's impartiality could reasonably be questioned." *Rechnitz*, 75 F.4th at 142–43 (cleaned up).

No reasonable person could conclude that the district judge's impartiality could reasonably be questioned. The record reflects that the district judge carefully considered Green's arguments throughout the entire case. He exhibited neither antagonism nor bias towards Green and there is no indication in the record that the district court prejudged Green's claims. The district judge's repeated attempts to enforce "courtroom administration . . . remain immune from challenge." *United States v. Wedd*, 993 F.3d 104, 115 (2d Cir. 2021) (cleaned up). We observe no abuse of discretion.[3]

\*　　\*　　\*

---

[3] Green briefly argues that the district court violated his Sixth Amendment right to counsel when it appointed standby counsel over his objections. There was no Sixth Amendment violation, as a district court may appoint standby counsel over a defendant's objection. *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975).

We have considered Green's remaining arguments and find them to be without merit.  For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court