108 F.3d 1370
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Richard I. JOHNSON, Sr., Defendant-Appellant.
 No. 96-1509.
 United States Court of Appeals, Second Circuit.
 March 21, 1997.
 
 APPEARING FOR DEFENDANT-APPELLANT: APPEARING FOR APPELLEE: RODNEY O. PERSONIUS (Brian M. Melber, Law Clerk, on the Brief), Brown & Kelly, L.L.P. Buffalo, NY.
 MARTIN J. LITTLEFIELD, Assistant United States Attorney (Patrick H. NeMoyer, United States Attorney for the Western District of New York), Buffalo, NY.
 Appeal from the United States District Court for the Western District of New York (Arcara, J.).
 PRESENT: HON. RICHARD J. CARDAMONE, HON. DENNIS JACOBS, HON. JOSE A. CABRANES, Circuit Judges.
 
 SUMMARY ORDER
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Western District of New York, and was argued by counsel.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court is AFFIRMED.
 
 
 3
 Following a jury trial in the District Court for the Western District of New York, Richard I. Johnson, Sr. was convicted of three counts of bankruptcy fraud and one count of conspiracy to commit bankruptcy fraud. Johnson was sentenced on July 26, 1996 to 41 months imprisonment and two years supervised release, as well as a fine of $75,000, restitution in the amount of $87,136, and the costs of any assigned counsel.
 
 
 4
 On appeal, Johnson argues that the district court erred in: 1) failing to exclude evidence produced by overbroad search warrants; 2) failing to instruct the jury on Johnson's theory of the defense; 3) sentencing Johnson under the 1995 version of the sentencing guidelines, thereby violating the prohibition against ex post facto punishments; and 4) enhancing Johnson's sentence by six levels by incorrectly calculating the amount of loss.
 
 I.Background
 
 5
 At all relevant times, Johnson and his son controlled Envirotek Limited, ("Envirotek") a treatment storage and disposal facility. The business of Envirotek was to obtain hazardous wastes from industrial generators, distill the wastes, and reclaim a portion of the original materials for reuse. Envirotek earned revenues by removing the waste and by selling the reclaimed material. The Envirotek plant was located at 4000 River Road, in Tonawanda, New York; the administrative offices were located at 849 Delaware Avenue in Buffalo.
 
 
 6
 In January of 1989, Johnson formed a corporation known as Arrowhead Environmental Services. The officers of Arrowhead were Johnson, Johnson's son, Joan Chuba,[1] and Fred Book. Five months earlier, a Post Office box had been opened under the name "Fred Book and/or Arrowhead Environmental Services," and a bank account was opened under the name "Fred Book d/b/a/ Arrowhead Environmental Services," with the p.o. box as the address for the bank account. In mid-January 1989, Johnson advised some of Envirotek's customers that billing for Envirotek services would henceforth be handled by Arrowhead.
 
 
 7
 Envirotek filed a Chapter 11 petition in bankruptcy on February 2, 1989. The petition and schedules were signed by Fred Book, as a purported officer of Envirotek. Joan Chuba was listed in the petition as a major creditor. Over the following months, monthly financial statements signed by Fred Book were submitted to the U.S. Trustee and the Bankruptcy Court. At trial, Book testified that he was unfamiliar with Envirotek's finances and had executed the bankruptcy documents as a favor to Johnson. The Bankruptcy Court issued an order in July 1989 directing that Envirotek produce all of its records to the court. Later that month, Johnson testified before the bankruptcy court that he did not recall being an officer or director of any company other than Envirotek.
 
 
 8
 Under Chapter 11, Envirotek was allowed to continue its business operations as a Debtor-In-Possession. Envirotek was required to maintain a separate set of records for its post-petition operations, including the collection of all accounts receivable on both post- and pre-petition services and products.
 
 
 9
 In the meantime, an environmental investigation had begun of several companies, including Envirotek, Arrowhead, Alpha Svenska Ltd., Inc., and Luxall Ltd.[2] The investigator, Walter Cain of the New York State Department of Environmental Conservation, obtained federal grand jury subpoenas for records from the companies in July 1989, and on August 8, Johnson testified before the grand jury that 1) he had produced all of Envirotek's records, and 2) he had not produced any Arrowhead records because he knew nothing about Arrowhead's management.
 
 
 10
 When Cain reviewed the records, he determined that not all of the records demanded in the subpoenas had been produced. On September 25, 1989, applications were submitted for warrants to search, inter alia, the River Road plant and two office suites at the Delaware Avenue site. Cain's affidavit in support of the warrants alleges that there was probable cause to believe that documents would be found at these locations which "would tend to show violations of unlawful storage and disposal of hazardous waste in violation of 42 U.S.C. § 6928(d)." The affidavit also alleged that all four businesses (including Arrowhead, Luxall, and Alpha Svenska) were all located in the Delaware Avenue offices, and were intertwined for the purposes of promoting Envirotek's operations. Two warrants were issued to search the River Road and Delaware Avenue offices, and to seize "any and all books and records" of all four companies. The warrants were executed on September 26, 1989.
 
 
 11
 Analysis of the seized books, combined with bank records later subpoenaed by the grand jury, indicated that income from Envirotek during the bankruptcy period had been deposited into the accounts maintained by other companies under Johnson's control, including Arrowhead, as well as accounts maintained by individuals close to Johnson, including Chuba.
 
 
 12
 Based on the information obtained via the warrants, Johnson was indicted on February 26, 1991, along with, inter alia, Johnson and Chuba. The twenty-one count indictment charged the defendants with numerous violations of the federal environmental laws, as well as five counts related to bankruptcy fraud. On June 8, 1995, the bankruptcy counts were severed from the environmental counts. The remaining indictment charged: 1) Johnson, his son, and Chuba with the fraudulent concealment of corporate assets of Envirotek--namely all cash receipts--in violation of 18 U.S.C. §§ 152 and 2; 2) Johnson and his son with fraudulent concealment of recorded information, namely a true account of post-petition total sales generated, certain invoices and a sales journal, in violation of 18 U.S.C. §§ 152 and 2; 3) Johnson with perjury before a U.S. grand jury in connection with his claim to have produced all of Envirotek's records and his disclaimer of any knowledge about Arrowhead, in violation of 18 U.S.C. §§ 1623 and 2;[3] 4) Johnson with making a false oath in a bankruptcy proceeding when he claimed he could not recall being an officer or director of any company besides Envirotek; 5) Johnson, his son, and Chuba with conspiring to commit the other counts, in violation of 18 U.S.C. § 371.
 
 
 13
 During the pre-trial proceedings, Johnson moved to suppress the evidence produced by the September 26, 1989 search warrants, on the ground that the warrants were unconstitutionally overbroad given the limits of the allegations of Cain's application and affidavit. The district court denied the motion on May 25, 1995, agreeing with a Report and Recommendation by Magistrate Judge Leslie G. Foschio.
 
 
 14
 At the charge conference, Johnson submitted a requested charge on the defense's theory; namely, that the evidence presented failed to prove that Johnson had the requisite knowledge or fraudulent intent necessary to establish his guilt under the indictment. The district court declined to adopt Johnson's proposed charge and instructed the jury instead that intent was one of the elements of the crime, but that good faith was an absolute defense.
 
 
 15
 At sentencing, Johnson objected to the district court's application of the 1995 version of the Sentencing Guidelines in its calculation of the offense level. He argued that the application violated the Ex Post Facto clause of the Constitution, because the criminal activity at issue--as well as the proof at trial--related to events that took place prior to November 1, 1989. (On that date, the Guidelines were amended to increase the penalty for bankruptcy fraud by three levels.) The district court, in its July 19, 1996 Order, decided that the 1995 Guidelines were appropriate, because there was evidence that the conspiracy had continued past November 1, 1989, and there was no evidence that Johnson had withdrawn from the conspiracy.
 
 
 16
 Johnson also objected to the district court's calculation of loss when determining his offense level, arguing that he should be given credit for funds used for "legitimate post-petition debts." In an Order dated July 19, 1996, the district court rejected Johnson's argument, and made an upward adjustment of six levels under U.S.S.G. § 2F1.1(b)(1), reflecting as loss all funds not properly reported to the Bankruptcy Court.
 
 
 17
 On appeal, Johnson reiterates his objections to the district court's disposition of 1) the search warrants; 2) the jury instruction; 3) the application of the 1995 Guidelines; and 4) the loss calculation.
 
 II.Discussion
 A.The Search Warrants
 
 18
 The Fourth Amendment requires that warrants "particularly describ[e] ... the person or things to be seized." When we review the particularity of a warrant, we construe the language of the warrant against "an illustrative list of seizable items." United States v. Riley, 906 F.2d 841, 844 (2d Cir.1990). Here, the list of items submitted by Cain specifically included, inter alia, all reports, business, personnel, and/or financial records for Envirotek, Alpha Svenska, and Luxall, as well as any and all books and records of all four corporations, as delineated in a detailed list of items. The list accurately and particularly described the list of seizable items, without providing unbridled discretion to the investigators. Moreover, a review of Investigator Cain's affidavit shows ample ground for finding pervasive fraud in mishandling and misaccounting of the disposal of hazardous wastes, and for finding that all four companies were involved in the disposal. See National City Trading Corp. v. United States, 635 F.2d 1020, 1026 (2d Cir.1980); United States v. Brien, 617 F.2d 299, 309 (1st Cir.1980). We agree with the district court that the affidavit set forth sufficient evidence to indicate that the corporate operations and books were permeated with fraud.
 
 B.Failure to Instruct on the Defense Theory
 
 19
 Johnson argues that the district court's failure to instruct on his theory of the defense was erroneous. We disagree. Johnson's proposed charge would have required that the district court marshal the evidence and mouth his arguments before the jury--in short, to argue Johnson's entire case as part of the instructions. The theory that Johnson asked the court to articulate in the charge was not a "defense" so much as it was an assertion that the government was unable to prove an element of its case: the intent prong. The district court carefully and thoroughly instructed the jury as to each of the elements the government was required to prove; more is not required.
 
 
 20
 C.Application of the Post-November 1, 1989 Guidelines
 
 
 21
 Johnson argues that the district court should have applied the 1988 version of the Sentencing Guidelines, because the criminal activity at issue--as well as the proof at trial--all pre-date November 1, 1989. The 1988 version did not provide a three-level increase for bankruptcy fraud. Because the Guidelines in this area have not been amended since the 1989 changes, the ultimate question is not whether the district court should have applied the 1988 or the 1995 Guidelines, but rather whether the court erred in applying changes that became effective on November 1, 1989.
 
 
 22
 We review the district court's factual findings for clear error. United States v. Lagatta, 50 F.3d 125, 127 (2d Cir.1995). The district court cited ample evidence that the conspiracy continued after November 1, 1989, including: 1) bankruptcy court filings made by Envirotek's lawyer in October and November 1990, which included false dollar amounts; 2) an Envirotek check dated June 29, 1990, made payable to Chuba--a listed creditor--for $50,000, written and cashed without the permission of the Bankruptcy Court; 3) the absence of evidence that Johnson had withdrawn from the ongoing conspiracy. In light of these findings, we decline to hold that the district court's decision to apply the 1995 Guidelines was clearly erroneous.
 
 D.The District Court's Calculation of Loss
 
 23
 Johnson argues that the district court should have offset the amount of funds that were the subject of improper reporting to the Bankruptcy Court by the amount of such funds he asserts were used to pay "legitimate post-petition debts." In its July 19, 1996 Order, the district court found that Johnson had
 
 
 24
 failed to prove by a preponderance of the evidence that some of the nonreported receipts were used to pay "legitimate" expenses and creditors of Envirotek. Indeed, the evidence at trial showed that defendant Johnson, Sr. regularly transferred money among different bank accounts in order to further his plan to conceal assets. Thus, [Johnson's] argument that some of the concealed monies were used to pay "legitimate" expenses and creditors is suspect at best.
 
 
 25
 It may be that some of the transfers at issue superficially resembled or mimicked legitimate corporate transactions; and it may be that some were in fact appropriate. But the district court was in the best position to follow the machinations of the defendant and the entities he operated, and its findings are not clearly erroneous. See Lagatta, 50 F.3d at 127. Because there is no clear error in the findings that Johnson did not use the money he concealed from the Bankruptcy Court to pay legitimate business expenses, we need not address the legal question of how loss should be calculated.
 
 
 26
 We have examined all of Johnson's contentions, and find them to be without merit. The judgment of the district court is therefore AFFIRMED.
 
 
 
 [1]
 Johnson's son, Richard I. Johnson, Jr., and Joan Chuba were also indicted and convicted. They are not involved in this appeal
 
 
 [2]
 Luxall provided sales, marketing, and advertising services for Envirotek, and Alpha Svenska was used to register the motor vehicles that transported hazardous wastes for Envirotek
 
 
 [3]
 Johnson was apparently acquitted of the perjury charge