**UNITED STATES of America**

v.

**Samuel LUGUIS, a/k/a "Alex," a/k/a "Samuel Luquis" a/k/a "Marino Ortega" Defendant.**

**No. 99 CR. 278(LMM).**

United States District Court,
S.D. New York.

April 12, 2001.

Richard Willstatter, Green & Willstatter, White Plains, NY, Israel Arana, Arana & Arana, New York, NY, John Curley, Fed. Defender Div., Legal Aid Society, New York, NY, Lee Ginsberg, Freeman & Ginsberg, New York, NY, for Defendant.

Jane A. Levine, Office of the U.S. Attys., Southern District of NY, New York, NY, for United States.

## MEMORANDUM AND ORDER

McKENNA, District Judge.

Defendant Samuel Luguis has filed a pretrial motion seeking (1) dismissal of the indictment because the facts proffered by the government are insufficient to support a finding that defendant's conduct obstructed, delayed or affected interstate commerce as required under the Hobbs Act, 18 U.S.C. § 1951; (2) dismissal of the indictment because of prejudicial pre-indictment delay; (3) suppression of the identification testimony or in the alternative a hearing to determine its admissibility; and (4) discovery pursuant to Fed. R.Crim.P. 16. For the reasons set forth below, defendant's motion is denied.

## I. Hobbs Act

Defendant argues that the facts proffered in the complaint and indictment are insufficient to establish a nexus between the charged robbery and interstate commerce sufficient to justify federal jurisdiction under the Hobbs Act. Defendant is alleged to have committed a residential robbery where the items taken amounted to $200 dollars, a watch and some jewelry. (Compl. ¶¶ 5, 9, Becker Aff. Ex. A.) The complaint further provides that a confidential witness informed the police that he and the defendant were asked to assist in the robbery to steal approximately $80,000 dollars, constituting receipts from a tire store, from the home of the store owner. (Compl.¶ 9.)

The indictment is facially valid because it states the elements of the stat-

ute charged and the approximate time and place of the alleged crime.[1] *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir.1998) (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir.1992)). In *United States v. Alfonso*, the Second Circuit reversed the district court's dismissal of an indictment on the grounds that it did not satisfy the jurisdictional requirement of Hobbs Act. The Court stated that "[w]e have never held that an indictment alleging a violation of the Hobbs Act must specify the precise nature of the effect upon interstate commerce that the government intends to prove at trial." *Id.* at 776. The Court noted that the jurisdictional requirement of the Hobbs Act is a substantive element of the offense charged and held that "[u]nless the government has made ... a full proffer of the evidence it intends to present at trial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." 143 F.3d at 776–77. The government has not made such a proffer here (Gov't Mem. at 10 n.2).

Therefore, the Court need not reach the question whether the Hobbs Act jurisdictional requirement has been satisfied. The appropriate time for defendant's Hobbs Act motion is at the close of the government's case-in-chief or of all the evidence or after the jury's verdict, and the motion may be renewed at such time or times.

■ Defendant next argues that the Grand Jury should have been instructed that to find jurisdiction under the Hobbs Act, "they must find a 'substantial connection' between the robbery and the tire store's business such that there was a 'realistic probability' the robbery could have affected interstate commerce" (Def. Mem. at 13) and because the indictment does not reflect such a finding, it should be dismissed. However, as already discussed, the Court finds the indictment facially valid. Further, defendant misstates the government's burden of proving that the crime charged affected interstate commerce, which is "de minimis,"[2] *United States v. Shareef*, 190 F.3d 71, 75 (2d Cir.

1. The indictment reads in relevant part as follows:

 Count One

 The Grand Jury charges:

 1. On or about November 15, 1995, in the Southern District of New York and elsewhere, SAMUEL LUGUIS, a/k/a "Alex," a/k/a "Samuel Luquis," a/k/a "Marino Ortega," the defendant, and others known and unknown, unlawfully, wilfully and knowingly did combine, conspire, confederate and agree together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), to wit, SAMUEL LUGUIS, a/k/a "Alex," a/k/a "Samuel Luquis," a/k/a "Marino Ortega," the defendant, and others known and unknown, robbed a tire store owner at gunpoint at a residence on Croes Avenue, Bronx, New York, and thereby obstruct, delay and affect commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3). (Title 18, United States Code, Section 1951(a).)

 Count Two

 The Grand Jury further charges:

 2. On or about November 15, 1995, in the Southern District of New York and elsewhere, SAMUEL LUGUIS, a/k/a "Alex," a/k/a "Samuel Luquis," a/k/a "Marino Ortega," the defendant, and others known and unknown, unlawfully, wilfully and knowingly did commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), to wit, the defendant robbed a tire store owner at gunpoint at a residence on Croes Avenue, Bronx, New York, and thereby obstruct, delay and affect commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3). (Title 18, United States Code, Section 1951(a) and 2.)

2. The Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) did not increase or alter the government's burden under the Hobbs Act. *United States v. Farrish*, 122 F.3d 146 (2d Cir.1997).

1999) (citing *United States v. Arena*, 180 F.3d 380, 389 (2d Cir.1999), *cert. denied*, 531 U.S. 811, 121 S.Ct. 33, 148 L.Ed.2d 13 (2000)), such that "[e]ven a potential or subtle effect on commerce will suffice." *Arena*, 180 F.3d at 389 (quoting *United States v. Angelilli*, 660 F.2d 23, 35 (2d Cir.1981), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (1982)).

 In the alternative to the dismissal of the indictment, defendant requests that the Court order the disclosure of the Grand Jury instructions pursuant to Fed. R.Crim.P. 6(e)(3)(C)(ii). The disclosure of grand jury instructions requires a "showing of 'particularized need.' " *United States v. Johnson*, No. 92 Cr. 39A, 1994 WL 805243, at *7 (W.D.N.Y. May 26, 1995) (quoting *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966)), *aff'd*, 1997 WL 136332, 108 F.3d 1370 (2d Cir.1997) (Table). Because defendant's argument for disclosure rests on the erroneous belief that the government must establish a "substantial connection" between the alleged robbery and interstate commerce when, as stated above, Second Circuit case law clearly finds it to be a de minimis burden, defendant has not established the requisite need for the disclosure of Grand Jury instructions.

## II. Prejudicial Delay

 Defendant seeks dismissal of the indictment arguing that the nearly two-year "delay" between when he was allegedly identified by one of the robbery victims on April 4, 1997 and his indictment on March 19, 1999 violates his right to Due Process because "had the federal charges been brought more timely, he would have been able to serve a greater portion of his state sentence concurrent with any federal sentence imposed, resulting in a shorter total period of incarceration." (Def. Mem. at 15 (citing U.S.S.G. § 5G1.3).) Although an indictment brought within the statute of limitations for the crimes charged within has a "strong presumption of validity," [3] such an indictment "may nevertheless violate due process where pre-indictment delay has been shown to cause 'substantial prejudice' to the defendant's ability to present his defense and 'the delay was an intentional device to gain [a] tactical advantage over the accused.' " *United States v. Cornielle*, 171 F.3d 748, 751–52 (2d Cir.1999) (quoting *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)). The only prejudice identified by defendant is the loss of a possible opportunity to serve part of any sentence received in this case concurrently to a New York State sentence for an unrelated crime. Defendant does not claim this lost opportunity affected his ability to present his defense. Thus, because defendant has not satisfied the first prong of the inquiry there is no basis for a hearing to determine the government's reasons for the passage of time between the identification and the indictment.

## III. Identification

Defendant argues that the photo array shown to witnesses by detectives from the New York City Police Department was impermissively suggestive and the witness' ability to identify defendant was unreliable. (Def. Mem. at 20.) Defendant moves to suppress the identification, or in the alternative, for a hearing to determine whether an in-court identification by the witness would be reliable independently from the photo array.

 There is a well-established two-step inquiry for reviewing identification chal-

---

**3.** Defendant does not argue that the indictment was untimely under the applicable statute of limitations.

lenges. First, the identification procedure is examined to determine whether in light of the particular facts of the case and the totality of the circumstances it was "unduly suggestive of the suspect's guilt." *United States v. Maldonado–Rivera,* 922 F.2d 934, 973 (2d Cir.1990), *cert. denied sub nom., Ramirez–Talavera v. United States,* 501 U.S. 1211, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991); *see Hunter v. Kuhlman,* No. 97 Civ. 4692, 1999 WL 246740, at *4 (S.D.N.Y. Apr.27, 1999).

■■■■ "In evaluating whether or not a photographic array was unduly suggestive, a court must consider several factors, including the size of the array, the manner of presentation by the officers, and the contents of the array." *United States v. Thai,* 29 F.3d 785, 808 (2d Cir.), *cert. denied sub nom., Lan Ngoc Tran v. United States,* 513 U.S. 977, 115 S.Ct. 456, 130 L.Ed.2d 364 (1994) and *Minh Do v. United States,* 513 U.S. 993, 115 S.Ct. 496, 130 L.Ed.2d 406 (1994). Here, defendant only challenges the contents of the photograph array, thus the "principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to 'suggest to an identifying witness that [that person] was more likely to be the culprit.'" *Jarrett v. Headley,* 802 F.2d 34, 41 (2d Cir.1986) (quoting *United States v. Archibald,* 734 F.2d 938, 940 (2d Cir. 1984)).

■■■■ Defendant makes two arguments that the identification was unduly suggestive: first, that in ten[4] out of the fifteen photographs the suspects wore New York State identification tags ("NYSID" tags) and second, the suspects not wearing the

NYSID tags "appear to be much darker-skinned than the rest of the subjects." (Def.'s Mem. at 21–22.) Defendant's argument, that by showing the witness ten photographs of individuals wearing a NYSID tag improperly narrowed "the focus of the identifying witness by suggesting that these [ten] individuals had already been arrested and processed by the police," (Def.'s Mem. at 21) must be rejected. Even if the witness did focus on the photographs of individuals wearing NYSID tags, ten photographs, the majority of the array, remained to be considered.[5] Furthermore, the government states that the witness was shown the photographs in three sets of five photographs where the five photographs of individuals without NYSID tags constituted one set, so that there was no possibility that the photographs of individuals with and without NYSID tags were commingled in any possibly suggestive manner.

■■■■ Defendant's photograph was one of the ten where the individual wore the NYSID tag and defendant argues that because the date on his NYSID tag, "7 28 96," is both the most recent date and the only date after the date of the alleged robbery, "[a] witness viewing these photos could easily surmise ... that the subjects arrested prior to the date of the offense were in custody at the time of the robbery and could not have perpetrated the crime." (Def.'s Mem. at 22.) Nothing on the tags indicates the significance of the numbers that constitute the date and each of the tags have two other sets of numbers, also without any indication of their significance. Even if the witness correctly interpreted the "7 28 96" as the date and saw that the

---

4. Defendant states that nine out of fifteen suspects wore the NYSID tags, however, based on the copies of the photographs attached as Exhibit B to the Becker Affirmation, the Court finds that ten of the fifteen wore the NYSID tags.

5. In *United States v. Bennett,* 409 F.2d 888, 898 (2d Cir.), *cert. denied sub nom., Haywood v. United States,* 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1969), the Second Circuit held that a photo array consisting of six photographs was not impermissibly suggestive.

date was the most recent out of the ten photographs of individuals wearing NYSID tags, the Court does not find it at all probable that the witness would then have thought that only the defendant was not in custody at the time of the alleged robbery.[6] In contrast to defendant's argument here, cases "where a photographic array was determined to be impermissibly suggestive based upon distinctive features of the defendant's photograph, that photograph was not merely distinct from the other photographs, but was distinct in that it closely matched descriptions of the defendant previously provided by the witness." *United States v. Taveras,* No. 94 Cr. 766, 1995 WL 600860, at *6 (S.D.N.Y. Oct.11, 1995); *see United States v. Fernandez,* 456 F.2d 638 (2d Cir.1972) (finding array unduly suggestive when defendant had been described as wearing a green shirt and was the only one in a lineup in a green shirt). The Court therefore finds that the fact defendant's NYSID tag had the most recent date on it was not impermissibly suggestive.

▪ Defendant also argues that the array was suggestive because individuals without NYSID tags appear to have darker skin than those pictured with the tags. Some physical differences between the individuals pictured in a photograph array is acceptable, "so long as the other pictures ... sufficiently resembled the defendant 'to allay any concern that the witnesses might have been unfairly influenced in selection of him by any of the noted physical differences between [the defendant] and the others.'" *United States v. Padilla,* No. 94 Cr. 313, 1994 WL 681812, at *6 (S.D.N.Y. Dec.5, 1994) (quoting *Gossett v. Henderson,* No. 87 Civ. 5878, 1991 WL

135601, at *2 (S.D.N.Y. July 18, 1991), *aff'd mem.,* 978 F.2d 705 (2d Cir.1992), *cert. denied,* 510 U.S. 997, 114 S.Ct. 564, 126 L.Ed.2d 463 (1993)). Although the five individuals pictured without NYSID tags do appear to be slightly darker skinned than defendant, defendant is not the only lighter skinned individual pictured in the fifteen photographs. The ten remaining individuals have a skin color very similar to that of defendant. Thus, defendant's skin tone does not set him apart or "identify him in any way." *Padilla,* 1994 WL 681812, at *7.

▪ Because the Court determines that the identification procedures were not suggestive, the identification is "admissible without any further reliability inquiry." *Thai,* 29 F.3d at 808. Thus, defendant's argument that because the photographic identification was made "nearly a year and a half after the robbery allegedly occurred ... [t]he passage of time surely affected the witness's ability to identify the attacker" (Def.'s Mem. at 22) goes to the weight of the identification, not to its admissibility.

## IV. Discovery

▪ The defendant requests that the Court order the government to provide additional discovery pursuant to Fed. R.Crim.P. 16. Defendant does not, however, identify any specific discovery item that has not been produced and the Court assumes that the United States Attorney's Office has complied with its obligations under this Rule. If this is not the case, defendant's counsel should promptly so notify the Court.

---

**6.** For example, some of the NYSID tags have dates from the 1980's and could give the impression of lengthy criminal histories.

**Conclusion**

Defendant's motion is denied.

SO ORDERED.