UNITED STATES of America, Appellee,

v.

Kevin SCHATZLE, Appellant.

No. 723, Docket 89–1482.

United States Court of Appeals,
Second Circuit.

Argued Feb. 1, 1990.

Decided April 6, 1990.

Lawrence K. Feitell, New York City, for appellant.

Elliot R. Peters, Asst. U.S. Atty. (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Kerri Martin Bartlett, Asst. U.S. Atty., of counsel), for appellee.

Before OAKES, Chief Judge, and KEARSE and FLETCHER *, Circuit Judges.

OAKES, Chief Judge:

Kevin Schatzle appeals from a judgment of conviction entered on September 25, 1989, by the United States District Court for the Southern District of New York, Pierre N. Leval, Judge. Schatzle, a Special Agent of the United States Secret Service, was convicted under 18 U.S.C. § 242 (1982)[1] for willfully depriving Christopher Gorayeb of his constitutional rights by subjecting him to excessive force. For the reasons stated below, we affirm.

## FACTS

On April 10, 1988, at approximately 5:00 p.m., a New York City motorcade carrying Senator Albert Gore, then a presidential candidate, was traveling north on West Street and turning east on Vesey Street. Schatzle was driving one of the cars in the motorcade. Believing the motorcade had passed, Christopher Gorayeb attempted to cross Vesey Street at the corner of West Street. As Gorayeb crossed the street, the car driven by Schatzle turned the corner and had to swerve to avoid striking Gorayeb. Gorayeb, standing by the driver's window as Schatzle drove past, cursed Schatzle. Schatzle testified that Gorayeb spat at him as well, though Gorayeb denied this.

The cumulative testimony of seven government witnesses yields the following account of what transpired. Schatzle stopped his car and ran after Gorayeb. Upon catching Gorayeb, Schatzle placed his hand on Gorayeb's shoulder and spun him around. Schatzle then punched Gorayeb in the face and, according to Gorayeb, broke his nose. He kicked Gorayeb repeatedly and delivered a knee to his groin with such power that, according to one witness, Gorayeb was thrust off the ground. After Gorayeb fell to the ground, Schatzle continued to punch and kick him. Finally, Schatzle handcuffed Gorayeb, by then well-bloodied, and informed him that he was under arrest.

Although at one point Gorayeb jerked Schatzle by his tie, the government witnesses agreed that Schatzle had struck Gorayeb first, and that Gorayeb grabbed at Schatzle's tie only in a desperate attempt of self-defense. The government witnesses

---

* Of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. Because the incident which gave rise to Schatzle's conviction took place on April 10, 1988, the November 18, 1988, amendment to Section 242, which increased the maximum penalty for civil rights violations resulting in bodily injuries to a ten-year term of imprisonment, *see* 18 U.S.C. § 242 (1988), did not apply.

also agreed that once Gorayeb cursed (and, according to Schatzle, spat at) Schatzle following the near collision, Gorayeb said nothing else to Schatzle that might have instigated Schatzle to attack him so ferociously.

Schatzle testified that when he first approached Gorayeb after Gorayeb had cursed him, he believed Gorayeb was prepared to strike him. Schatzle contended that Gorayeb was the true aggressor throughout the struggle, that he acted solely to subdue Gorayeb, and that he never intended to violate any of Gorayeb's civil rights. Schatzle also presented evidence describing the severity of neck injuries he claimed to have suffered from having his tie yanked by Gorayeb, though other evidence indicated that the injuries had a different source. Several Secret Service officials offered testimony describing the training Secret Service officers receive in the responsible use of force. A number of Schatzle's colleagues also testified as to Schatzle's reputation for honesty and peacefulness.

The jury found Schatzle guilty of the excessive force charge, but found Schatzle not guilty of the charge that he deprived Gorayeb of his civil rights, in violation of Section 242, by subjecting him to a false arrest. The district court sentenced Schatzle to a six-month term of imprisonment to be served at a halfway house, a three-year term of probation, and a $2,000 fine.

## DISCUSSION

### A. *The District Court's Jury Instructions on Excessive Force*

 Schatzle contends that the district court incorrectly instructed the jury concerning what it needed to find to conclude that Schatzle had used excessive force.

Several weeks before Schatzle's trial, the Supreme Court handed down *Graham v. Connor*, — U.S. —, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), in which it outlined the standard governing the right to be free from excessive force in the context of an investigatory stop or arrest. The Court explained that excessive force claims in

arrest and investigatory stop contexts implicate the Fourth Amendment right to be free from unreasonable seizures and consequently are judged under the Fourth Amendment's reasonableness standard. *See id.*, 109 S.Ct. at 1871. Although noting that " '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' " *id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979)), the Court laid out several guideposts for measuring an excessive force claim. First, it instructed that evaluating whether a law enforcement officer has used excessive force

> requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* 109 S.Ct. at 1871–72. The Court added that in judging whether an officer's actions are reasonable, a court looks "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 1872.

Measured against this standard, we believe the district court's jury instructions were sound. The district court initially charged the jury as follows:

> Now, let me talk about excessive force under Count One.

> Even if Schatzle had the right to question or arrest Gorayeb, that would not necessarily mean that he had the right to use force or violence against him. On this issue, the question of whether Schatzle was entitled to use force, and if so, how much, depends on what Gorayeb's conduct was.

> If an agent is authorized to arrest or detain someone, and the person resists, the agent is entitled to use a reasonable amount of force to overcome that resistance.

> Also, if an agent is attacked by another person, the agent is entitled to use

reasonable force to repel the attack and subdue the attacker.

How much force the agent is entitled to use depends upon how much force or resistance he encounters. The amount of force the agent may use is the amount that is reasonable to deal with the resistance or attack that he faces.

In short, the agent may use as much force as is reasonable to insure his own safety and accomplish his legitimate law enforcement objective. He may not use more, he may not use unreasonable or excessive force.

. . . .

The fact that a police officer is entitled to use some force in a particular circumstance does not mean that he may use unlimited amounts of force. He may use that amount of force which is reasonable under the circumstances to accomplish his legitimate law enforcement objectives, protect himself and repel any attack.

In response to a request from the jury, the district court repeated the substance of its charge on the standard for excessive force and summarized the evidence presented by both parties relevant to the excessive force issue.

Schatzle offers a litany of passages from *Graham* and argues that the district court should have closely incorporated these particular passages directly into its charge. We disagree. The passages quoted to us by Schatzle do no more than reiterate the general notion that whether a particular use of force is excessive ultimately turns on its reasonableness. We cannot place the talismanic weight urged by Schatzle on *Graham*'s exact wording and do not be-

lieve the district court needed to echo the opinion paragraph by paragraph to convey adequately its import to the jury. *Graham* requires that the district court impress upon the jury the necessity of assessing whether the force employed by Schatzle was reasonable in light of the particular situation and dangers facing Schatzle at the time he encountered Gorayeb. Because the district court's instructions did just that, Schatzle's argument fails.[2]

## B. The District Court's Restrictions Upon Inquiry Into Gorayeb's Prior Arrest

Schatzle challenges several evidentiary rulings made by the district court. The first challenge stems from Schatzle's attempt to present evidence of a 1985 incident involving Gorayeb and a Columbus, Ohio, police officer. The police officer, John Diamond, had stopped Gorayeb for riding his bicycle at a dangerous speed. Gorayeb exchanged heated words with Diamond and then grabbed Diamond. Diamond thereafter arrested Gorayeb for disorderly conduct and resisting arrest. These charges later were dropped, ostensibly in exchange for Gorayeb's pleading guilty to a charge of careless operation of a bicycle and paying a ten dollar fine. When Gorayeb later applied for admission to the New York state bar, he failed to mention this incident in response to a question asking about any prior arrests.

The district court allowed inquiry into Gorayeb's omission of his prior arrest from the bar application, reasoning that this evidence was relevant to Gorayeb's capacity for truthfulness and thus was a proper subject for impeachment. *See* Fed.R.Evid. 608(b). When so questioned, Gorayeb

---

**2.** While instructing the jury, the district court briefly summarized the pertinent evidence, noting the Government's theory that Schatzle attacked Gorayeb "in anger." Schatzle objects that the summarization led the jury to consider whether he had subjective malice towards Gorayeb, which, as *Graham* points out, is not relevant to evaluating the reasonableness of a use of force. *See Graham,* 109 S.Ct. at 1872. We find no basis in Schatzle's claim that the district court's summarization of the evidence somehow led the jury to inject its assessment of his malice into its deliberation of his culpability.

Moreover, we note that the district court's inclusion of the Government's contention that Schatzle acted in anger was necessitated by Schatzle's insistence that the district court summarize for the jury his contention that he responded as his Secret Service training had taught him to react. Before accepting Schatzle's proposed instruction, the district court made clear that it intended to balance the charge by instructing the jury on the Government's contention that Schatzle acted in anger. Having assented at trial to this reasonable arrangement, Schatzle may not attack it on appeal.

claimed that he omitted the Ohio arrest because he had believed it "did not fall within the parameters of the questions asked on the bar application." The district court then allowed Schatzle to rebut Gorayeb's claim of inadvertent mistake by calling Diamond to testify about Gorayeb's attempt to have the resisting arrest and disorderly conduct charges dropped so as not to prejudice his application to the New York state bar.

The district court, however, did not permit Diamond to testify as to what actually transpired between him and Gorayeb on the date he arrested Gorayeb. Schatzle contends that Diamond's testimony would have established that Gorayeb physically challenged Diamond when Diamond first approached him. This, Schatzle contends, would have tended to show that Gorayeb was "an arrogant, feisty, and very quick-tempered person who was likely to respond physically to any show of official authority" and, according to Schatzle, would have supported his claim that Gorayeb was the aggressor in their altercation. The district court refused to admit evidence of this incident because it considered the event too remote in time to furnish a useful foundation for inferring how Gorayeb acted in his altercation with Schatzle, and because it was concerned that a digression into the incident might cause undue delay and confusion.

Although Federal Rule of Evidence 404(a)(2) allows a criminal defendant to introduce pertinent traits of an alleged victim's character, Rule 403 vests the district court with broad discretion to exclude such evidence when outweighed by the danger of undue delay or confusion. We reverse a district court's ruling under Rule 403 only upon abuse of discretion. *See, e.g., United States v. Peterson,* 808 F.2d 969, 974 (2d Cir.1987); *United States v. Reed,* 790 F.2d 208, 211–12 (2d Cir.), *cert. denied,* 479 U.S. 954, 107 S.Ct. 445, 93 L.Ed.2d 393 (1986). Schatzle offered a single, three-year-old incident as evidence tending to show through inference that Gorayeb had instigated their altercation. The district court was well within its discretion in concluding that the potential delay from allowing a mini-trial on Gorayeb's conduct during his 1985 altercation with Diamond outweighed any likely probative value such an inquiry would yield upon the question whether Schatzle used excessive force upon Gorayeb. If anything, as the district court apparently recognized, allowing Schatzle to plunge into the facts underlying Gorayeb's 1985 arrest posed a genuine risk of focusing the jury upon the wrong event.[3]

Schatzle alternatively contends that Diamond's testimony concerning Gorayeb's altercation with him was admissible as impeachment evidence of a prior bad act. Because Federal Rule of Evidence 608(b) bars the use of such extrinsic evidence to attack a witness' credibility, *see Peterson,* 808 F.2d at 973–74, this contention fails.

Finally, Schatzle objects to the Government's examination of Gorayeb in connection with this incident. After the district court had expressed its predisposition to allow inquiry into Gorayeb's omission of his prior arrest from his New York state bar application, the Government, apparently concerned with presenting the incident to the jury in the least damaging light, brought this matter out during Gorayeb's direct examination. Although Schatzle intimates that this was somehow improper, Federal Rule of Evidence 607 explicitly permits a party to impeach its own witness. Also, Schatzle contends that Gorayeb's brief, background explanation of the facts underlying his Ohio arrest allowed Gorayeb to foster an impression of himself as a peaceful person and in so doing invited further inquiry into his altercation with Diamond to rebut Gorayeb's portrayal of his character. Because Gorayeb's description of the Ohio incident was so brief, we do not believe the Government's preliminary questioning placed Gorayeb's

---

**3.** Schatzle also claims that the details of the Diamond–Gorayeb altercation could have been admissible under Federal Rule of Evidence 404(b) as evidence of a common design or plan.

Regardless whether Schatzle's characterization is accurate, and we doubt that it is, the district court remained entitled to exclude the evidence under Rule 403.

character into issue. Moreover, given that the district court had permitted inquiry into the Ohio incident only insofar as it related to Gorayeb's New York state bar application, Schatzle should have objected at trial to any government attempt to elicit character evidence from Gorayeb. Schatzle did not do so.

## C. *The District Court's Restriction Upon Expert Testimony*

█ Schatzle next challenges the district court's restriction upon the testimony of John Desmedt, a supervisor of emergency reaction services for the Secret Service whom Schatzle offered as an expert witness. The district court allowed Desmedt to testify about the training received by Secret Service agents in dealing with potential assailants, because such testimony arguably might have explained Schatzle's state of mind when he confronted Gorayeb. However, the district court refused to allow Desmedt to testify as to "what opinion or expert advice . . . he [would] have given to an agent confronted with the facts faced by [Schatzle]," reasoning that evidence pertaining to what Desmedt would have told Schatzle if so asked was not probative of Schatzle's actual state of mind.

█ A district court has broad discretion in admitting expert testimony, and we reverse only if the district court's determination is manifestly erroneous. *See, e.g., United States v. Diaz*, 878 F.2d 608, 616 (2d Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 543, 107 L.Ed.2d 540 (1989); *United States v. Everett*, 825 F.2d 658, 662 (2d Cir.1987), *cert. denied*, 484 U.S. 1069, 108 S.Ct. 1035, 98 L.Ed.2d 999 (1988). Desmedt's proffered expert testimony would have gone to the ultimate issue whether Schatzle's use of force upon Gorayeb was reasonable. Although the Federal Rules of Evidence do not bar all expert testimony concerning an ultimate issue, *see* Fed.R. Evid. 704, a district court may exclude ultimate issue testimony under Federal Rule of Evidence 702 when it is not helpful to the jury, or under Rule 403 when it may be unduly prejudicial. *See United States v. Brown*, 776 F.2d 397, 401 (2d Cir.1985)

(citing Fed.R.Evid. 704 advisory committee's note), *cert. denied*, 475 U.S. 1141, 106 S.Ct. 1793, 90 L.Ed.2d 339 (1986); *United States v. Young*, 745 F.2d 733, 765–66 (2d Cir.1984) (Newman, J., concurring), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). The district court concluded that the jury was capable of assessing the reasonableness of Schatzle's conduct on its own and that Desmedt's "expert" opinion on the issue might confuse the jury. We find no error in the district court's conclusion.

## D. *Sufficiency of the Evidence*

█ Finally, Schatzle argues that the evidence presented at trial was insufficient to establish his guilt and that the district court erred in denying his motion for a judgment of acquittal. In reviewing a criminal defendant's challenge to the sufficiency of the evidence used to convict him, we credit all inferences in favor of the Government and affirm if, upon a reasonable view of the evidence, the jury could have found guilt beyond a reasonable doubt. *See United States v. Zimmitti*, 850 F.2d 869, 873 (2d Cir.1988).

For the jury to have convicted Schatzle of violating Section 242 by using excessive force, it needed to find that Schatzle, acting under the color of law, willfully violated Gorayeb's constitutional right to be free from excessive force by using an unreasonable amount of force given the circumstances. As our discussion of the facts establishes, the Government advanced ample evidence on which the jury could have found Schatzle guilty.

Judgment affirmed.