**UNITED STATES, Appellee,**

v.

**Kevin CARTER, Defendant–Appellant.**

No. 05–2177.

United States Court of Appeals, Second Circuit.

March 27, 2006.

---

Norman Pattis, Bethany, Connecticut, for Defendant–Appellant.

John Danaher III, Assistant United States Attorney, District of Connecticut (Kevin J. O'Connor, United States Attorney, District of Connecticut), for Appellee.

Present: THOMAS J. MESKILL, ROSEMARY S. POOLER, and PETER W. HALL, Circuit Judges.

### SUMMARY ORDER

Defendant-appellant Kevin Carter ("Carter" or "appellant") appeals from his conviction and sentence entered in the United States District Court for the District of Connecticut (Ellen B. Burns, *J.*).

Carter was indicted on May 26, 2004, in connection with the March 20, 2003, armed robbery of a jewelry store. On January 21, 2005, the jury found Carter guilty on all three counts for violation of the Hobbs Act and related firearms offenses. On May 2, 2005, the district court sentenced Carter to 360 months imprisonment. We assume the parties' familiarity with the facts, procedural history, and specification of issues on appeal.

We review issues of fact for clear error, and issues of law de novo. *See Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *United States v. Davis,* 326 F.3d 361, 365 (2d Cir.2003).

On January 7, 2005, the district court held an evidentiary hearing on Carter's motion to suppress evidence seized from his automobile. A warrantless search is justified only if it falls within a recognized exception to the warrant requirement. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In denying Carter's motion, the district court found that the warrantless search of Carter's automobile was constitutional under three exceptions to the warrant requirement: the inventory search, search incident to arrest, and the automobile exception. Because we conclude that the search was constitutional under the inventory search exception and the automobile exception, we decline to address the search incident to arrest.

In *United States v. Thompson,* 29 F.3d 62 (2d Cir.1994), this Court explained, "[r]egarding the propriety of a search incident to an arrest, inventory searches of items lawfully obtained by the police fall within a well-defined exception to the Fourth Amendment's warrant requirements." *Id.* at 65. The fruit of inventory searches will be suppressed when the searching agents act in bad faith or solely

for the purpose of investigation. *See Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990) (law enforcement officials may open closed containers as part of an inventory search so long as they act in good faith pursuant to "standardized criteria ... or established routine" (citation omitted)). The existence of a valid procedure may be proven by reference to either written rules and regulations, *United States v. Wilson,* 938 F.2d 785, 789–90 (7th Cir.1991), or testimony regarding standard practices, *United States v. Arango–Correa,* 851 F.2d 54, 59 (2d Cir.1988).

Here, the district court found that the inventory search was conducted pursuant to Windsor Police Department written procedures. According to these procedures, the inventory search is not necessary if the operator gives permission for someone at the scene to remove the vehicle. According to the uncontested facts established at trial, Carter's wife did not arrive until the search was nearly complete, and there was no indication at the time that the search began that she would take the car away. The government argues that once Carter's wife arrived, there was no reason to list the inventory for Carter's protection, because she would take the automobile home. Carter points to no evidence establishing that this search was done in bad faith or was a pretext "for a general rummaging in order to discover incriminating evidence." *Wells,* 495 U.S. at 4, 110 S.Ct. 1632.

In *California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), the Supreme Court explained that "a warrantless search of an automobile, based upon probable cause to believe that the vehicle contained evidence of crime in the light of an exigency arising out of the likely disappearance of the vehicle, did not contravene the Warrant Clause of the Fourth Amendment." *Id.* at 569, 111 S.Ct. 1982 (citing *Carroll v. United States,* 267 U.S. 132, 158–59, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). In *United States v. Gaskin,* 364 F.3d 438 (2d Cir.2004), this Court explained that the exception requires only a "fair probability" that contraband or evidence of a crime will be found. *Id.* at 457 (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Here, Carter does not contest the fact that a marijuana cigarette was seen in the open ashtray. This gave rise to a fair probability that contraband or evidence of a crime would be found.

Carter next contests the admission of expert testimony from FBI analyst James Smith ("Smith"). Carter argues that no foundation was laid for the photographs used to demonstrate that Carter's hat was the same hat worn by the man who attempted to withdraw money from the Springfield ATM, and that the witness should not have been deemed an expert.

Admission of expert testimony under Rule 702 will be reversed only for manifest error. *United States v. Schatzle,* 901 F.2d 252, 257 (2d Cir.1990). Rule 702 of the Federal Rules of Evidence requires that expert testimony be: (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) applied reliably to the facts of the case. Fed.R.Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (holding that pursuant to the trial judge's "gatekeeping responsibility," she "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable"). This Court reviews a trial court's evidentiary rulings, including the decision to admit or exclude expert testimony, for abuse of discretion. *See Nimely v. City of New York,* 414 F.3d 381, 393 (2d Cir.2005).

Here, Smith explained the protocol and process he used to compare the photos,

including how the images were made. He testified that he had been deemed an expert in previous state and federal courts. He testified that he had done this procedure hundreds, if not thousands, of times before. He explained that he was not creating new images, but rather transferring them from video to digital format, so he could alter the lighting. Moreover, Carter offers no evidence or testimony to explain why Smith should not have been qualified as an expert. Even during voir dire of Smith, Carter elicited no testimony or responses, which could have led the district court to disregard Smith's expert testimony.

The admission of photographic evidence is governed by Rule 901 of the Federal Rules of Evidence. Rule 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). Rule 901 "does not erect a particularly high hurdle," and that hurdle may be cleared by "circumstantial evidence." *United States v. Dhinsa*, 243 F.3d 635, 658–59 (2d Cir.2001) (internal citation and quotation marks omitted). The government is not required "to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir.1999) (internal citation and quotation marks omitted). A district court has broad discretion to determine whether a piece of evidence has been properly authenticated. *United States v. Tropeano*, 252 F.3d 653, 661 (2d Cir.2001). Here, the district court did not abuse its discretion in finding that the photographs were properly authenticated.

■ Carter's final argument on appeal is that his Hobbs Act conviction should be reversed because there was insufficient evidence for the jury to find that the robbery had an impact on interstate commerce. In *Dhinsa*, this Court explained that "[a] defendant challenging a conviction based on a claim of insufficiency of the evidence bears a heavy burden.... Accordingly, we will not disturb a conviction on grounds of legal insufficiency of the evidence at trial if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 243 F.3d at 648–49 (internal quotation marks and citations omitted). Section 1951 provides, in relevant part, that a person is guilty of a crime who,

> in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery ... or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section....

18 U.S.C. § 1951(a).

The burden of proving a nexus to interstate commerce is minimal. *United States v. Shareef*, 190 F.3d 71, 75 (2d Cir.1999). "The jurisdictional requirement of the Hobbs Act may be satisfied by a showing of a very slight effect on interstate commerce. Even a potential or subtle effect on commerce will suffice." *United States v. Angelilli*, 660 F.2d 23, 35 (2d Cir.1981) (internal citations omitted). In *United States v. Elias*, 285 F.3d 183 (2d Cir.2002), the prosecution arose out of a robbery at a neighborhood grocery store in Queens. Even though this Court characterized the crime as a "stick-up of a neighborhood grocery store," *Id.* at 187, it found an interstate nexus because the beer and fruit, which the grocery store purchased from in-state suppliers, "originated out-of-state." *Id.* at 189. Here, there was testimony that Harstan's purchases jewelry from international and out-of-state

sources, and Harstan's sells $200,000 worth of products to interstate customers. Harstan's watches are manufactured in Switzerland, the jewelry comes, in part, from Canada and Massachusetts, diamonds are purchased in Israel, and gold is purchased in Italy. It took Harstan's months "to build up the inventory to the pre-robbery level." The uncontested evidence is that the robbers transported some of the stolen property across state lines. Finally, Carter allegedly told his cell mate that he believed the stolen goods would be "fenced" internationally. The evidence was therefore sufficient to support the jury's verdict.

Accordingly, for the reasons set forth above, the judgment of the District Court is hereby AFFIRMED.