**UNITED STATES of America**

v.

**THANH QUOC HOANG, Defendant.**

**No. 5:11–CR–38 (CAR).**

United States District Court,
M.D. Georgia,
Macon Division.

Aug. 16, 2012.

Verda M. Colvin, Macon, GA, for United States of America.

Federal Defenders Middle District of Georgia Inc., Cynthia W. Roseberry, L. Elizabeth Lane, Macon, GA, for Defendant.

### ORDER ON GOVERNMENT'S MOTION IN LIMINE

C. ASHLEY ROYAL, District Judge.

The Government has moved to exclude the four opinions of Defendant's expert, J.P. Gingras. Having considered the Government's Motion [Doc. 35] and brief, Defendant's two briefs, and the applicable law, the Court **GRANTS** the Motion in part. The Court excludes Mr. Gingras's opinions 1, 2 and 4, and admits opinion 3, provisionally.

### BACKGROUND

The Government has indicted Defendant Thanh Quoc Hoang for eleven counts of bank fraud. The superseding indictment accuses Hoang of using a scheme to defraud credit card companies by opening credit card accounts and then illegally obtaining goods, services, and cash from credit card companies. To carry out the scheme, he wrote worthless checks. The indictment alleges that from April 1, 2004, until May 31, 2004, Hoang defrauded financial institutions out of $349,071.33. Simply stated, Hoang allegedly scammed credit card companies out of huge sums of money.

On April 24, 2012, Defendant's attorney gave the Government Gingras's expert report. On May 3, 2012, the Government filed this Motion challenging the admissibility of Gingras's expert opinions under Rule 702. Hoang's attorneys have responded with two briefs. The Court does not believe that a hearing will help it rule on the motion, so the matter is now ripe for decision.

### STANDARD OF REVIEW

District courts have broad discretion in admitting or excluding expert testimony.[1] "Federal Rule of Evidence 702, as explained by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[2] and its progeny, controls determinations regarding the admissibility of expert testimony."[3] Under Rule 702 and *Daubert,* the trial court acts as a gatekeeper to admit or exclude expert testimony.[4] As a gatekeeper, the court must follow Rule 702's requirements, and Rule 702 requires the Court to undertake a three-part inquiry:

> (1) [T]he expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated by Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand evidence or to determine a fact in issue.[5]

1. *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 142, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997).

2. 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

3. *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir.1998) (footnote and citation omitted).

4. *Quiet Tech. DC–8 v. Hurel–Dubois UK Ltd.,* 326 F.3d 1333, 1340 (11th Cir.2003).

5. *Quiet Tech.,* 326 F.3d at 1340–41 (citation omitted).

Hoang must satisfy each of Rule 702's three elements to have each of his expert's four opinions admitted.

 "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or defendant in a civil suit, or the Government or the accused in a criminal case."[6] And this is a substantial burden.[7] Rule 702 affords a defendant in a criminal case no lenient treatment and no lesser standard for admitting expert opinions. The Court's ruling on this motion primarily turns on Rule 702's helpfulness requirement.

 Whether the expert testimony will help the jury understand the evidence or a fact in issue "goes primarily to relevance."[8] "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."[9] In other words, "expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."[10] Also, vague opinions don't help a jury either, and, in fact, may mislead them.

The courts regularly exclude vague and imprecise opinions because they will not assist the trier of fact. For example, in *McDowell v. Brown,*[11] the court characterized the expert's testimony as "too vague" and explained that "[a] mere guess that earlier treatment would either have improved [the plaintiff's] condition or rendered it the same simply fails the tests for expert opinion."[12]

Also, in *United States v. Frazier,*[13] the court criticized the expert's testimony as "imprecise" and "unspecific," and explained that, in light of such imprecision, the jury "could not readily determine whether the 'expectation' [alluded to by the expert] was a virtual certainty, a strong probability, a possibility more likely than not, or perhaps even just a possibility."[14] The Court will return to *Frazier* later in this order.

So, consistent with Rule 702's helpfulness requirement, the Court excludes the first, second, and fourth of Gingras's four opinions because they do not help the jury and because they offer nothing more than what Hoang's attorney can say in closing argument. The Court, however, provisionally admits the third opinion. Gingras will have to show at trial that the Governments' double-counting and incorrect addition that overstates Hoang's criminal liability is more than a math problem that the jury can solve in the jury room. The Court will resolve this at trial after a brief *in camera* examination of Gingras's testimony on this point.

## DISCUSSION

The Court does not question Gingras's credentials, his data, or the reliability of his methods. But Rule 702 requires more. And the more is that the expert must offer something beyond what his lawyer can ar-

---

6. *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir.2004) (en banc).

7. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.,* 402 F.3d 1092 (11th Cir. 2005).

8. *Daubert,* 509 U.S. at 591, 113 S.Ct. 2786.

9. *Quiet Tech.,* 326 F.3d at 1347 (citation and internal quotation marks omitted).

10. *Frazier,* 387 F.3d at 1262–63.

11. 392 F.3d 1283, 1299, 1301 (11th Cir.2004).

12. *Id.* at 1301.

13. 387 F.3d at 1266.

14. *Id.* at 1266.

gue to the jury. Also, the expert must offer conclusions beyond the ken of ordinary laymen.

The indictment alleges eleven counts of bank fraud. The fraud involves Security Bank, a checking account, an initial cash deposit, writing bad checks, applying for credit cards, and charging with credit cards. Hoang allegedly opened the bank account to get the credit cards and then used the credit cards to buy goods, services, and cash. He allegedly wrote worthless checks to credit card companies from the Security Bank account. Along this alleged path of crime, he used bad checks to get more credit cards and charged more goods and services.

What is there about this scheme that a jury can't understand? The jury will know what a bank is, what a checking account is, what a credit card is, what goods and services are, and what it means to write and mail a worthless check to pay an honest debt. They will know what credit is and how it works. They will know about identity theft, and, no doubt, some have been victims of that plague. Moreover, the Court expects that almost everyone on the jury panel either has now or has had a bank account or a credit card. Most of them will have filled out credit card applications.

So it follows that the jury will know how to read a bank statement and a credit card statement and how to write checks and charge with credit cards. Further, the Court expects that all the jurors can add and subtract and know if a bank account has enough money to cover a check that pays a debt. Consequently, this case does not require expert opinions, or at least three of the four opinions that Gingras offers in this case. Now we will look at these opinions more closely.

Gingras is a forensic accountant. He has four opinions based on his review of Hoang's financial records, credit card applications, and banking records. These are common financial records, the likes of which millions of Americans routinely receive and read, and the jury will have them in evidence. Based on these records, he opines that:

> *Opinion 1:* Defendant's bank account and credit card statements are "not determinative" that Defendant is responsible for the fraud. [Doc. 35–1].

> *Opinion 2:* The pattern of activity during the Indictment Period, when compared to pre-indictment activity, is "unusual," "out of the ordinary," and "unique." [Doc. 35–1].

> *Opinion 3:* The actual amount of the alleged total fraud ("Adjusted Amount") is "less significant" than the amount presented in the Indictment. [Doc. 35–1].

> *Opinion 4:* The size and magnitude of the Adjusted Amount is consistent with "the possibility" that Defendant was a victim of identity theft. [Doc. 35–1].

Before moving forward, the Court notes that all four opinions are conspicuous for their vagueness. The court will return to this problem later in the order. As stated above, the Court is excluding opinions 1, 2, and 4, and provisionally admitting 3.

■ The Court will first consider whether the three excluded opinions assist the trier of fact. To assist a jury, the expert's opinions must cover matters beyond the ken of jurors—something beyond the average citizen's experience.[15] The Court can address this issue with several questions. First, the Court can ask "whether the expert testimony improperly addresses matters within the understand-

**15.** *United States v. Rouco,* 765 F.2d 983, 995 (11th Cir.1985) (holding that the trial court did not err in excluding expert testimony that defendant could have confused or mistaken an ATF agent, whom he killed, for a Mafia hitman).

ing of the average juror." [16] The answer is yes. Next, the Court can ask if the issues are highly technical and complicated.[17] The answer is no. Next, the Court can ask if the factual and legal issues in the case involve specialized knowledge.[18] Again, the answer is no. This case involves matters of common knowledge.

Credit card scams are common, everyday schemes to cheat banks out of money. Such scams are the well-travelled, dark alleys to easy cash. As outlined above, jurors hearing this case will have ample experience with banks, checking accounts, and credit cards to decide this case. The case involves common knowledge, common experience, and common crimes.

As such, in a matter that is obviously within the juror's common knowledge, expert testimony "almost by definition, can be of no assistance" and "[t]rouble is encountered only when the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense." [19] Writing checks and charging with credit cards are routine life

activities. Likewise, there is nothing esoteric about defrauding banks by writing bad checks or scamming banks with credit card schemes.[20] Yet, an expert must do more than repeat common knowledge and common sense.[21] The court believes that the jury can understand this case without an expert's specialized knowledge. Consequently, the expert must offer more than what the witnesses can say and what the evidence shows, and Gingras fails to do that in this case with opinions 1, 2, and 4. Regarding his third opinion, it may or may not assist the jury.

■ Next, an expert's opinions must offer the jury more than what a lawyer can say in closing argument.[22] Indeed, "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." [23] A witness cannot merely deliver a jury argument from the witness stand.[24] Opinions 1, 2 and 4 are all nothing more than jury arguments.

**16.** *United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir.1993) (holding that it was not error to exclude an INS inspector's opinion that nervousness is not a sign of guilt in a person carrying drugs across the Mexican border).

**17.** *Patterson v. McLean Credit Union*, 805 F.2d 1143, 1147 (4th Cir.1986), *modified on other grounds*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (holding that the trial court did not err in excluding expert opinion on the relative qualifications of two clerical employees).

**18.** *United States v. Romero*, 57 F.3d 565, 572 (7th Cir.1995) (involving expert testimony about the tools of the drug trade, holding that "our society has not progressed (or rather, descended) to the point where the tools of the drug trade are familiar to all").

**19.** *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir.1986) (involving a slip and fall case in which the trial court errone-

ously admitted expert testimony about a curb where plaintiff fell while walking in high heels).

**20.** *United States v. Onumonu*, 967 F.2d 782 (2d Cir.1992) (reversed for failing to admit expert testimony on smuggling diamonds out of Africa, an esoteric activity).

**21.** *United States v. Ebron*, 683 F.3d 105, 138 (5th Cir.2012) (explaining that "[t]o be considered expert, testimony must involve more than 'common sense or the officers' past experience formed from firsthand observation.") (citing *United States v. Jackson*, 549 F.3d 963, 975 (5th Cir.2008)).

**22.** 402 F.3d 1092 (11th Cir.2005).

**23.** *Air Crash at New Orleans*, 795 F.2d 1230, 1233 (5th Cir.1986).

**24.** *United States v. Cano*, 289 F.3d 1354, 1363 (11th Cir.2002).

In *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida,*[25] plaintiff sued the sheriff under § 1983 for a pretrial detainee's death by suicide in the county jail. The trial court excluded certain expert opinions because they did not assist the trier of fact, and because they offered nothing but jury arguments, and the court of appeals affirmed.[26]

The trial court excluded opinions from Dr. Maris, a suicide prevention expert, explaining that the Maris was "telling the jury how to rule," and that the opinions "may be invading the province of the jury."[27] Maris wanted to "talk about what was wrong with the procedures and policies of the [MCDC] and the fact with a relatively small population that is a lot of suicides in a two year period and something is intrinsically wrong with the system."[28] The court of appeals affirmed the trials court's exclusion of the expert's opinions, for various reasons, including that some of the opinions amounted to nothing more than a jury argument.[29]

The same logic applies in this case. That the credit card statements are not determinative, opinion 1, that the accountant activity was unusual and out of the ordinary, opinion 2, and that it is possible that the Hoang was a victim of identity theft, opinion 4, are simple jury arguments. They are gratuitous comments that one would expect Hoang's defense lawyer to argue without any opinions from an expert. Hence, they should be excluded.

■ Now we can work through each opinion separately guided by the helpfulness requirement, beginning with opinion

1. Gingras tells us that he has looked at the Government's records and finds that they are "**not determinative [of fraud].**" [Doc. 35–1] (emphasis added). The court sees no difference in saying that the records are not determinative of fraud and that the records are not determinative of guilt. This amounts to nothing more than a jury argument. But beyond that objection, an accountant, even a forensic accountant, cannot offer testimony about the legal implications of evidence.

In *United States v. Baskes,*[30] a prosecution for a tax fraud conspiracy, the trial court properly excluded the opinions of a lawyer, one of Baskes's alleged co-conspirators. The trial court excluded his opinion that he did not unlawfully, knowingly and willfully combine with Baskes to defraud the Government. The appellate court affirmed.[31] In affirming the trial court's ruling, the court of appeals held:

> When as here, a witness is asked whether the conduct in issue was 'unlawful' or 'willful' or whether the defendants 'conspired,' terms that demand an understanding of the nature and scope of the criminal law, the trial court may properly conclude that any response would not be helpful to the trier of fact, the witness, unfamiliar with the contours of the criminal law, may feel that the legal standard is either higher or lower than it really is. If either event is true the jury may accord too much weight to such a legal conclusion.[32]

Although Gingras does not use the same terms, he is opining directly or indirectly about the sufficiency of the Government's evidence. An accountant does not know

25. *Id.*

26. *Id.* at 1107.

27. *Id.* at 1108.

28. *Id.*

29. *Id.* at 1110–11.

30. 649 F.2d 471 (7th Cir.1980).

31. *Id.* at 478.

32. *Id.*

criminal law or understand legal standards, and the Court should not allow him to testify about how the jury should weigh the evidence, what conclusions to draw from the evidence, or what the Government's evidence shows or does not show. Ultimately, he is offering a loosely veiled legal opinion that the Court must exclude.[33]

■ In reality, Gingras wants to tell the jury that the evidence doesn't show that Hoang is guilty. This is obviously the jury's job and only the jury's job. Here, Gingras has invaded the jury's province. Although Rule 704(a) abolished the ultimate issue rule, an expert "may not, however, merely tell the jury what result to reach. A witness also may not testify to the legal implications of conduct."[34] The jury must decide what the evidence shows or does not show. Opinion 1, therefore, fails for several reasons.

■ Now on to his second opinion. Gingras opines that the activity pattern on Hoang's account is unusual, out of the ordinary, and unique. Criminal conduct is by its very nature unusual and out of the ordinary, even though it is not necessarily unique. It is outside of the law, so it is out of the ordinary. It is unusual in the sense that usual conduct is lawful. But most important, if Hoang did not engage in criminal conduct before the indictment period, and then did engage in criminal activity during the indictment period, that would be unusual, out of the ordinary, and unique for Hoang. The Court does not understand how this broad and vacuous conclusion assists the jury. Finally, the opinion is vague, if not elusive. Opinion 2 also fails the helpfulness test.

Regarding opinion 3, the Court reserves its ruling until after the *in camera* hearing. If the Court finds that Gingras has identified nothing more than a math problem with the Government's indictment, then it will be excluded. But the Court is concerned that the Government may have unfairly duplicated charges or losses, and that the jury may need help discerning the difference. That remains to be seen.

■ Finally, for the Rule 702 analysis, Gingras's "possibility" opinion especially concerns the court. In opinion 4, Gingras opines that "these facts support the *possibility* that Mr. Hoang was the victim of identity theft during the Indictment Period." [Doc. 351–1] (emphasis added). A possibility is an abstraction. A possibility is a vague quantity, if in fact it represents any quantity at all. The word epitomizes vagueness. *Black's Law Dictionary* defines possibility as: 1. An event that may or may not happen.[35] Indeed, as too many people agree: anything is possible. A possibility is a contingency that never completes itself. Hardly the stuff of admissible evidence.

The Court does not understand how a jury can work with Gingras's opinion about the possibility of identity theft to decide Hoang's guilt or innocence. A possibility cannot serve as a reason for reasonable doubt. At this point, the Court will return to a deeper look into the *Frazier* case.

In *Frazier,* defendant, accused of kidnapping a woman out of a Wal–Mart parking lot and later raping her, called a forensic investigator, Tressel, to testify that in his opinion Frazier did not rape the victim in the car. Tressel opined that if Frazier had intercourse with the victim, Tressel would have expected that hair or seminal

---

**33.** Although *Baskes* involved lay opinions and not expert opinions, both Rule 701 and 702 require that all opinions must assist the trier of fact, so the same analysis applies. *See* Fed.R.Evid. 701, 702.

**34.** *Montgomery v. Aetna Cas. & Sur. Co.,* 898 F.2d 1537 (11th Cir.1990).

**35.** 7th Ed., 1185

fluid would have been recovered.[36] That Tressel would have expected to find hair or seminal fluid was not enough. As the Court of Appeals explained in affirming the trial court's exclusion of the opinion for lack of helpfulness:

> "Turning finally to the third requirement for admissibility of expert opinion—whether it will assist the trier of fact in understanding the evidence—the district court also concluded that Tressel's opinion regarding 'expectation' would not aid the jury. Again, because Tressel's opinion was imprecise and unspecific, the members of the jury could not readily determine whether the 'expectation' of find hair or seminal fluid was a virtual certainty, a strong probability, a possibility more likely than not or perhaps even just a possibility. As a result, Tressel's imprecise opinion easily could serve to confuse the jury, and might well have misled it." [37]

Gingras's fourth opinion suffers from the same infirmity. It is interesting that the court of appeals offered a spectrum of what might be described as the weight or the precision or the value of Tressel's opinion. It begins with the strongest type of opinion—absolute certainty, and works step-wise downward to the weakest. And the weakest is a possibility—all that Gingras offers in his fourth opinion. This possibility opinion must be excluded because it does not help the jury, because it says nothing more than what Hoang's lawyer can argue to the jury, and because it will likely mislead the jury. The same logic applies to opinion 2 that the pattern of activity during the indictment period is unusual, out of the ordinary, and unique.

But the Court has already dealt with that opinion.

■ Finally, there is another problem with these three opinions. A trial court may strike opinion testimony both when it is not helpful under Rule 702 and also under Rule 403 when it may cause undue prejudice.[38] Rule 403 states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative."

Rule 403 applies in this case. Even if the Court has improperly concluded that opinions 1, 2, and 4 do not assist the jury, the likely prejudice from those opinions outweighs their minimal probative value. Moreover, those opinions will likely confuse the issues and mislead the jury.[39] The Court recognizes it must balance the probative value of the opinions with the likely prejudice, and the Court has done that. The weight goes against admitting them. Gingras's vague opinions, his overgeneralizations, and his summary conclusions are calculated to obstruct not clear the path for the jury's verdict. As the Eleventh Circuit Court of Appeals has said, the "major function of [Rule 403] is limited to excluding matter[s] of scant or cumulative probative force, dragged in by the heels for the sake of [their] prejudicial effect[s]." [40] As the court further explained: "[s]imply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." [41] The Court has

---

**36.** *Frazier*, 387 F.3d at 1266.

**37.** *Id.*

**38.** *United States v. Schatzle*, 901 F.2d 252 (1990).

**39.** *Frazier*, 387 F.3d at 1263.

**40.** *United States v. Schlei*, 122 F.3d 944, 981 (11th Cir.1997) (citing *United States v. Veltmann*, 6 F.3d 1483, 1500 (11th Cir.1993)).

**41.** *Frazier*, 387 F.3d at 1263.

weighed opinions 1, 2, and 4 and has found them wanting. The Court excludes them under both Rule 702 and Rule 403.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the Government's Motion in Limine [Doc. 35] and excludes Gingras's first, second, and fourth opinions, and provisionally admits his third opinion pending an *in camera* examination at trial